857 So.2d 1223 (2003)
STATE of Louisiana
v.
Mustafa MUHAMMAD.
No. 03-KA-419.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2003.
*1224 Paul D. Connick, Jr., District Attorney, Alan D. Alario, II, Terry Boudreaux, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The defendant was convicted of 17 counts of access device fraud in violation of La. R.S. 14:70.4. This is defendant's third appeal in this case. He was adjudicated a multiple offender and sentenced to life in prison. In an unpublished opinion, this court affirmed his conviction of violation of La. R.S. 14:70.4, but set aside the multiple offender adjudication because of an error patent. On remand, the trial court adjudicated the defendant a multiple offender based on evidence submitted in the first habitual offender hearing. This Court found that to be reversible error in State v. Muhammad, 02-338 (La.App. 5 Cir. 10/16/02), 831 So.2d 358. Upon remand, the trial court held another hearing on the *1225 multiple offender indictment and the defendant was adjudicated a multiple offender. He has appealed his adjudication as a multiple offender.
On appeal, defendant argues that the State was not entitled to file an Amended Habitual Offender Bill of Information after he had completed his term of incarceration, and that the court, therefore, erred in failing to quash the amended bill. The State responds that the delay in the multiple bill proceedings was not attributable to any dilatory tactics and was mostly attributable to defendant's two appeals.
The trial court heard the Motion to Quash the multiple bill filed by counsel on April 27, 2001. The trial court denied the motion. On May 18, 2001, the trial court took up the matter of the habitual offender bill. The court first allowed defendant to put on additional evidence in support of his Motion to Quash. Defendant introduced the testimony of Collette Chapman of the State Department of Corrections. Ms. Chapman produced a department document entitled Release Date Computation Information, which detailed defendant's incarceration and release dates. The document shows that defendant was remanded on August 26, 1998. His original and adjusted diminution of sentence date is listed as August 24, 2000. Ms. Chapman testified that August 24, 2000 was the date on which defendant was to be released from prison. However, defendant remained on parole, under State supervision, after his prison release. His full-term date is given in the document as August 23, 2002.
On December 17, 2002, the trial court heard another Motion to Quash the multiple bill filed by counsel. No testimony was taken. After hearing arguments of counsel, the trial court denied the motion, stating:
I believe that the State has been timely. The major reason for us being here so long afterwards is appellate action and waiting for the appellate court, and then the appellate court having made rulings to have us have additional hearings. So I think that the original or that the multiple bill was filed timely within the meaning of the jurisprudence, which gives no actual date. It just says, "in a reasonable time," and I think it was reasonable.
So the [sic] for those reasons, the motion to quash the multiple bill are [sic] denied.
The Court then held a hearing on the multiple bill, found the defendant to be a multiple offender and sentenced the defendant to life in prison.
While LSA-R.S. 15:529.1 does not establish a time limitation, a habitual offender bill must be filed within a reasonable time after the State learns the defendant has prior felony convictions. State v. Conrad, 94-232, p. 2 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, 1063, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345. The rationale for this requirement is the protection of the defendant's constitutional right to a speedy trial and to know the full consequences of the verdict within a reasonable time. State v. Anderson, 01-158 (La.App. 5 Cir. 5/16/01), 788 So.2d 561.
In State v. Grimes, 01-0576 (La.App. 4 Cir. 5/2/01), 786 So.2d 876, the defendant argued that the trial court erred in denying his Motion to Quash the habitual offender hearing and in subsequently finding him to be a habitual offender. The defendant argued that, at the time of the habitual offender hearing, he had already served 23 months of a three-year sentence and was on parole. The defendant further complained that, although the State filed the habitual offender bill on the day he was sentenced, the hearing was reset 18 times over a 16-month period. The defendant *1226 claimed that, during that time, he never requested a continuance.
The Fourth Circuit held that the defendant was not prejudiced by the 16-month delay in hearing the habitual offender bill, despite the fact that he had been paroled by the time the hearing was held. The court reasoned that the defendant received timely notice that the State would seek sentencing enhancement when the State filed its habitual offender bill at the time of sentencing. The court further noted that the defendant did not show who requested the continuances he complained of, or that they were unjustified. State v. Grimes, 01-0576 at pp. 13-15, 786 So.2d at 884-885.
In State v. Jenkins, 595 So.2d 780 (La. App. 5 Cir.1992), this Court found that a two-year lapse between the filing of the habitual offender bill and the hearing was not unreasonable so as to violate the defendant's due process rights, where the defendant was notified of the intended filing of the bill immediately upon his conviction for the underlying offense, and was still incarcerated when the habitual offender hearing took place.
We find that the filing of the multiple offender bill was timely. The State filed the original habitual offender bill on the day defendant was sentenced. This immediately put defendant on notice that one of his sentences would be enhanced. The delay in re-hearing the habitual offender bill did not violate defendant's right to a speedy trial. The delay was principally caused by the movement of defendant's case through the appellate process, and not by any action by the State.
However, proceedings against a convicted defendant to enhance his sentence under the Habitual Offender Law must be completed before he has satisfied his sentence for the underlying felony and been discharged from custody for that offense. State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986) (per curiam); State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974). Although a defendant might be released on parole, he is not yet discharged from custody because "[T]he expiration of a sentence is the date that the defendant is discharged from supervision; that is the discharge date under the sentence imposed." State v. Scamardo, 97-197, p. 8 (La.App. 5 Cir. 2/11/98), 708 So.2d 1126, 1130 (quoting State v. Dominick, 94-1368 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, writ denied, 95-2291 (La.2/2/96), 666 So.2d 1091).
Based the record before us, the date the defendant was to be discharged from supervision was August 23, 2002. This is based on the document prepared by DOC employee, Chapman, that states defendant's full-term date as August 23, 2002. According to the law as set forth by the Supreme Court in State ex rel. Glynn v. Blackburn, supra, all multiple bill proceedings had to be completed by defendant's discharge date. Therefore, the trial court erred in denying defendant's Motion to Quash on December 17, 2002. We note, however, as did the trial court, that the reason why the multiple offender proceeding was not completed earlier was because of errors in the previous habitual offender proceeding, which we recognized during the appellate process. We find no dilatory tactics or bad faith on the part of the State, but are bound by Louisiana Supreme Court jurisprudence to grant the defendant's Motion to Quash. Unless or until the Legislature clarifies the applicable time period for completing habitual offender proceedings existing, Supreme Court precedent controls and the imposition of a habitual offender enhanced sentence must occur before the defendant's full term discharge date on the underlying offense.
*1227 CONCLUSION:
For the foregoing reasons, the trial court's denial of defendant's Motion to Quash the multiple bill is set aside and defendant's life sentence as a multiple offender is vacated.
REVERSED.