875 So.2d 45 (2004)
STATE of Louisiana
v.
Mustafa H. MUHAMMAD.
No. 2003-K-2991.
Supreme Court of Louisiana.
May 25, 2004.
*46 Charles C. Foti, Jr., Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Counsel for Applicant.
Margaret S. Sollars, Thibodaux, Counsel for Respondent.
WEIMER, Justice.
This matter is before the court on the limited issue of whether a multiple offender adjudication must be completed prior to the defendant serving the sentence imposed on the underlying offense. We must also consider whether the holdings in the per curiam opinion of this court in State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986), and the opinion in State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974), are correct.
Following conviction and on the day of sentencing of the defendant for 17 counts of access device fraud, the State filed a habitual offender bill charging the defendant as a multiple felony offender. Due to a series of events including two appeals by the defendant in which the court of appeal vacated the multiple offender adjudication and sentence and remanded for further *47 proceedings, defendant completed his full sentence on the underlying charge prior to completion of the multiple offender proceeding.[1] Defendant perfected a third appeal. Finding the trial court was precluded from imposing a multiple offender sentence after defendant completed the underlying sentence, the court of appeal reversed. State v. Muhammad, 03-419 (La.App. 5 Cir. 9/30/03), 857 So.2d 1223.
This court granted the State's application for writ of certiorari to consider whether, under the circumstances of this case, defendant's adjudication as a multiple offender was timely. State v. Muhammad, 03-2991 (La.1/16/04), 864 So.2d 612.
For reasons that follow and to the extent that the opinions are inconsistent with this opinion, we overrule the bright line rule articulated initially in State ex rel. Williams v. Henderson, and followed in State ex rel. Glynn v. Blackburn, reverse the decision of the court of appeal, reinstate defendant's adjudication and life sentence as a fourth felony multiple offender, and remand to the court of appeal for consideration of the other issues raised by defendant on appeal.

FACTS AND PROCEDURAL HISTORY
Mustafa H. Muhammad was charged by bill of information filed on April 29, 1998, with 17 counts of access device fraud. A jury found him guilty as charged on March 18, 1999. The trial court sentenced defendant to two years each on counts 1 through 16, with the sentences to run concurrently. On count 17, defendant was sentenced to two years to run consecutively to the sentences imposed on counts 1 through 16. At the original sentencing on April 9, 1999, the State informed defendant of its intent to file a habitual offender bill[2]. Following the multiple offender hearing conducted on August 9, 1999, the court indicated the defendant was a fourth felony offender, vacated the original sentence on count 1 and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[3] The court further ordered that the sentence on count 17, originally ordered to run consecutively to the sentences on counts 1 through 16, continue to run consecutive.
The defense made an oral motion for appeal and reconsideration of sentence following the sentencing. It was not until March 2, 2000, that a written order of *48 appeal was signed.[4] On appeal, defendant argued: the trial court erred in failing to suppress physical evidence and defendant's statement; erred in allowing the State to introduce "other crimes" evidence without proper notice; the evidence was insufficient to support a conviction; and the State failed to meet its burden of proof that defendant was a multiple offender. In an unpublished opinion, State v. Muhammad, 00-1239 (La.App. 5 Cir. 2/14/01), 786 So.2d 985, writ denied, 01-0984 (La.2/8/02), 807 So.2d 862, the court of appeal affirmed the convictions and sentences, set aside the habitual offender adjudication and resentencing,[5] reinstated the vacated sentence on count 1, and remanded for further proceedings.[6]
On March 27, 2001, the State refiled a multiple offender bill of information charging the defendant as a fourth felony offender.[7] The defendant pled not guilty on April 6, 2001. Defense counsel filed a motion to quash the multiple bill which the parties argued on April 27, 2001. The trial court denied the motion and defendant expressed intent to seek writs on the ruling. Meanwhile, the multiple bill hearing was set for May 18, 2001. Although the trial court had previously denied the motion to quash, the defendant was allowed to introduce evidence during the hearing of the calculated release date in the absence of a multiple bill in support of his motion to quash the bill of information. The State requested the court adopt the testimony from the prior multiple offender hearing and sentence defendant in accordance with the findings. Defense objected and moved for a full hearing.
Review of the transcript indicates the following observation from the trial court:
Okay. We've discussed this in chambers for quite a bit of time and thrashed out the legal ramifications, and the Court is of the opinion that all of the facts involved were submitted at the original multiple bill hearing. And based upon the facts presented, I made a factual and legal conclusion that Mr. Mustafa Muhammad was, in fact, a fourth felony offender that the State had proved three prior felony convictions, two of which were crimes of violence in the State of California.
Because of the technicality on the bill situation, as was mentioned by Ms. Miller [assistant district attorney], the appellate court has sent this back. I believe it would be aand I don't believe it would be a violation of anyone's rights; I think it would be in the interest of *49 judicial economythat the facts from the prior hearing, which are all of record in this case, be used, and we not have an additional hearing.
Thus, the court, over defendant's objection, adopted the facts and testimony taken at the first hearing on August 9, 1999, and found the defendant to be a fourth felony offender. The court vacated the previous sentence on count 1 and sentenced the defendant to life in prison at hard labor without probation, parole, or suspension of sentence. The defense gave oral notice of the intent to appeal.
On October 26, 2001, the court signed an order permitting defendant's private counsel to withdraw from the representation of defendant and appointed the Louisiana Appellate Project to represent defendant. On October 30, 2001, the trial court granted defendant an out of time appeal returnable to the court of appeal on January 14, 2002.[8]
In the appellate court, defendant alleged the trial judge erred in sentencing him as a fourth felony offender, arguing the bill of information was not timely filed as he had been released from custody at the time of the filing. He argued in the alternative that the State failed to meet its burden of proof on the three predicate felonies.
The court of appeal found reversible patent error. At the multiple offender hearing, the trial judge based his finding and enhancement of sentence on the evidence submitted in the first habitual offender hearing.[9] The court of appeal found the defendant was entitled to a hearing during which the State must prove the allegations of the habitual offender bill. LSA-R.S. 15:529.1(D)(2). The adjudication as a fourth felony offender and the enhanced sentence were vacated and the case was again remanded to the district court. State v. Muhammad, 02-338, p. 6 (La.App. 5 Cir. 10/16/02), 831 So.2d 358, 360.
On remand, the trial court conducted another multiple offender hearing on December 17, 2002, following which defendant was again adjudicated a fourth felony offender and sentenced to life in prison. Defendant appealed, arguing the State was not entitled to file an amended habitual offender bill of information after he had completed his term of incarceration and the trial court erred when it failed to quash the amended bill. The State argued the multiple bill proceedings had been conducted in a timely fashion and any delay was mostly attributable to defendant's two prior appeals.
The decision of the court of appeal indicates the court found the filing of the multiple offender bill timely. The court noted the original habitual offender bill was filed on the day defendant was sentenced; therefore, defendant was immediately placed on notice that the State intended to enhance his sentence. The court of appeal found "no dilatory tactics or bad faith on the part of the State" and the "delay was principally caused by the movement of defendant's case through the appellate process." Muhammad, 03-419 at 5, 857 So.2d at 1226.
Nevertheless, feeling constrained by and citing State ex rel. Glynn v. Blackburn, *50 485 So.2d 926 (La.1986), the court of appeal ruled that the proceedings to enhance defendant's sentence must be completed before the sentence for the underlying felony is satisfied and defendant is discharged from custody for that offense. The court of appeal reversed the ruling of the lower court and held the trial court should have granted defendant's motion to quash the habitual offender bill of information. Muhammad, 03-419 at 5-6, 857 So.2d at 1226.
The State applied for writ of certiorari on the ruling which this court granted.

DISCUSSION
The State's writ application was granted to consider the continuing validity of a jurisprudential requirement that proceedings under a habitual offender bill filed pursuant to LSA-R.S. 15:529.1 be completed prior to the time defendant satisfies the original sentence imposed by the trial court. The limited issue for consideration by this court involves a determination of whether the adjudication and resentencing of a defendant as a multiple offender must be completed prior to defendant's completion of the underlying sentence.
In order to resolve this issue, we begin by examining the language of the statute that provides for enhancement of penalty for habitual offenders. LSA-R.S. 15:529.1.[10]
The language of the statute pertinent to this case is found in Section (D)(1)(a) *51 *52 which provides: "If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ... the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction or adjudication of delinquency." The same section further provides: "Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." (Emphasis provided.)
Review of the statute reveals the absence of a prescriptive time period for completion of the habitual offender proceeding. Wording of the statute indicates the legislature contemplated the multiple offender proceeding could be brought against an individual who was not incarcerated.
In reversing the trial court ruling in this matter, the court of appeal relied on this *53 court's per curiam in State ex rel. Glynn v. Blackburn which cited State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974), for the proposition that proceedings to enhance a sentence under LSA-R.S. 15:529.1 must be completed before the defendant satisfies his sentence on the underlying felony and has been discharged from custody for that offense. In State ex rel. Williams v. Henderson, this court was confronted with determining whether the language of the statute in LSA-R.S. 15:529.1(D) ("If, at any time, either after conviction or sentence, ...") meant that an enhanced penalty could be imposed after a defendant served his sentence and after nineteen months elapsed following the sentence imposed on the underlying charge. In State ex rel. Williams v. Henderson, this court considered and limited the holding of State v. George, 218 La. 18, 48 So.2d 265 (1950)[11] to the facts of that case declining to extend George beyond its facts.
The facts in State ex rel. Williams v. Henderson were distinguishable from those in George. Henderson was sentenced to two and one half years on May 26, 1971. He appealed the conviction which was affirmed. Following the denial of a rehearing on June 13, 1972, the district attorney filed a bill of information charging petitioner as a fourth felony offender on August 15, 1972 (two months after defendant's appeal was final). Defendant was discharged as having served his sentence under the good time act of 1972 on September 20, 1972. It was not until December 21, 1972, (approximately 4 months after filing the habitual offender bill and 19 months after original sentencing) that defendant pleaded guilty to being a third felony offender, at which time his prior sentence was vacated and an enhanced sentence imposed. Subsequently, the defendant sought habeas corpus relief which was denied. An application for writ of certiorari was granted and this court, two justices dissenting, vacated the judgment of the district court and ordered petitioner discharged from custody. The court noted the resentencing proceeding had been delayed due to the filing of motions and requests for continuances by defense counsel. Nevertheless, this court held the statute required a proceeding to have a defendant sentenced as a multiple offender be completed before the defendant serves the sentence[12] which is to be *54 enhanced. State ex rel. Williams v. Henderson, 289 So.2d at 77.
The instant case is factually distinguishable from State ex rel. Williams v. Henderson in that the defendant in this case received notice on the date of his original sentencing that the State intended to enhance his penalty pursuant to the multiple offender statute. In fact, the State filed the bill of information charging the defendant as a multiple felony offender on the same day he was sentenced. Any expectation defendant may have had in the finality of his initial sentences totaling four years at hard labor ended four months later on August 9, 1999, when the court adjudicated him a fourth offender[13] and sentenced him to life in prison at hard labor. Due to remand following two appeals, defendant has been adjudicated a fourth felony offender three times, twice within the term of his original commitment.
In deciding this case, the court of appeal felt constrained by the bright line rule established in State ex rel. Williams v. Henderson. A fallacy of the bright line rule of State ex rel. Williams v. Henderson and State ex rel. Glynn v. Blackburn is that a defendant could delay the appellate process, as defendant did in this matter (see footnotes 4 and 8), and have that delay count against the State. While we do not suggest the defendant intentionally delayed this matter, one should not claim the benefit of delay when one is the cause of the delay. In addition to the normal delay in the court of appeal, defendant's case was dormant between sentencing and out of time appeals on two occasionseach in excess of six months.
A combination of a relatively short underlying sentence and delays in the appellate process occasioned by defendant seeking review of his sentence on two prior occasions served to deprive the State of the opportunity to pursue habitual offender proceedings to finality before the defendant's discharge date was reached on the underlying sentence. In lieu of a bright line rule which has no statutory basis, we find an evaluation of the circumstances surrounding the multiple offender proceeding should be conducted on a case by case basis. In the process, the court can assure that defendant's due process rights are protected. Any inordinate delays or bad faith on the part of the State to prejudice the defendant in any fashion would be subject to the scrutiny of the court.
Although the statute does not prescribe a time within which the bill must be filed, this court has made a determination that the district attorney must file the habitual offender bill "within a reasonable time." Relying on the language of the statute regarding the filing, as opposed to the completion of a habitual offender proceeding, this court previously held that the statute "does not allow an indefinite time in which the district attorney may file the multiple offender bill once the necessary information is available." State v. Toney, 02-0992 (La.4/9/03), 842 So.2d 1083, citing State v. McQueen, 308 So.2d 752, 755 (La. *55 1975). The court in McQueen relied on defendant's constitutional right to a speedy trial[14] and the provision of LSA-C.Cr.P. art. 874 which requires criminal sentences be imposed without unreasonable delay. This court concluded the multiple offender bill must be filed "within a reasonable time after the necessary information is available to the appropriate district attorney." McQueen, 308 So.2d at 755. See also State v. Broussard, 416 So.2d 109, 110 (La.1982). An important factor to consider in determining whether the bill was filed timely requires a determination of when the district attorney acquired the knowledge that defendant is a multiple offender. Id. The determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case. See Toney, 02-0992 at 5, 842 So.2d at 1086.
As a general matter, the Supreme Court has set forth four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated. Those factors are the length of the delay, the reasons for the delay, the accused's assertion of his right to speedy trial, and the prejudice to the accused resulting from the delay. Barker v. Wingo, 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972). This court adopted the Barker factors in State v. Reaves, 376 So.2d 136 (La.1979). While these factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.
We acknowledge that the Sixth Amendment, by analogy, may superimpose a limitation; however, a case by case evaluation is warranted to determine whether the proceeding has been promptly concluded. See State ex rel. Williams v. Henderson, 289 So.2d at 77. Similarly, relevant speedy trial considerations may be used to assist the court in a determination of whether any delays are unexplained or extraordinarily long. Abusive or vindictive delay should not be tolerated. The longer the State delays filing and is responsible for postponing completion of the habitual offender proceeding, the more likely it is that the delay will be charged against the State.
We find the requirement superimposed upon the statute by the decision in State ex rel. Williams v. Henderson wandered too far from the language of the statute. In that opinion, the majority acknowledged: "Perhaps the literal reading of the language of the statute supports the broader implications of George; nevertheless, other considerations convince us that the present interpretation is to be preferred." State ex rel. Williams v. Henderson, 289 So.2d at 77. Although the court recognized the resentencing procedure was delayed due to motions and requests for continuances by defense counsel, the court held the proceeding was not timely and thus the State could not resentence the defendant. Id.
The court in State ex rel. Williams v. Henderson established a bright line rule that superimposed a requirement for completion of the proceedings not mentioned in the statute. Nothing in the statute dictates the result of State ex rel. Williams v. Henderson, a fact acknowledged by the majority opinion and pointed out in the dissent authored by Justice Summers.[15]
*56 There are two concepts at issue in this casethe timely filing of a multiple offender bill of information and the timely hearing or completion of the proceeding. We agree with the court of appeal that the State did not delay in filing the enhancement charge and there has been no showing of bad faith on the part of the State. The error occurred when defendant was adjudicated a fourth felony offender although the only bill of information in the record charging him as a multiple felony offender actually charged him as a third felony offender. Counsel for defendant eloquently argued defendant should not be penalized for prevailing on appeal. Although counsel for defendant argued the State caused delays during the course of the proceedings, review of the record indicates no inordinate delays on the part of the State. We agree that defendant should not be penalized for appealing; we are simply applying the law as it is written.
Defendant knew from the date of his original sentencing that the State intended to charge him as a multiple offender. Within four months of sentencing, the first multiple offender hearing was conducted and defendant resentenced as a multiple offender. Due to remand following two appeals, defendant was not finally adjudicated as a multiple offender until approximately two months after the second remand and four months after his full sentence completion date. Part of the delay is attributed to defense counsel. Defendant was never released from prison only to have the State thereafter file enhancement proceedings. There is nothing in the record to establish any abusive or vindictive behavior on the part of the State.
Following a thorough review of the provisions of the statute, as well as the cases of George, State ex rel. Williams v. Henderson, and State ex rel. Glynn v. Blackburn and the facts of the present case, we conclude there is no reason for this court to jurisprudentially provide a bright line deadline by which the habitual offender proceeding must be completed. Although the statute has been amended on several occasions since its enactment, the legislature has failed to establish such a time frame. To the extent the majority opinion in State ex rel. Williams v. Henderson is inconsistent with views expressed herein, it is overruled. Additionally, the per curiam opinion of State ex rel. Glynn v. Blackburn is overruled.

CONCLUSION
For the foregoing reasons, we overrule State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974), to the extent it establishes a bright line rule, and State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La. 1986); we reverse the ruling of the court of appeal in State v. Muhammad, 03-419 (La.App. 5 Cir. 9/30/03), 857 So.2d 1223, reinstate defendant's adjudication and life sentence as a fourth felony offender, and remand to the court of appeal for consideration of the other issues raised by defendant on appeal.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
*57 CALOGERO, Chief Justice, concurring.
I concur. The result is correct, although I am not convinced that it is necessary to overrule State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986) and State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974). I have no difficulty with the majority's resolution of this case. I agree that the State did not delay in filing the enhancement charge against the defendant and thus the defendant was put on notice from the date of his original sentencing that the State was charging him as a multiple offender.
I concur here, however, to point out that State ex rel. Williams v. Henderson involved a slightly different factual scenario which led to the court's correctly concluding that the proceeding in that case was not held timely and the State was without power to resentence the defendant. The majority acknowledges that the present case is distinguishable from State ex rel. Williams v. Henderson yet still feels compelled to overrule it, albeit to the limited extent that it purportedly establishes a "bright line" rule, as well as State ex rel. Glynn v. Blackburn, which follows State ex rel. Williams v. Henderson. I would not overrule these cases, for they were correctly decided.
In State ex rel. Williams v. Henderson, the court was faced with a scenario wherein the district attorney delayed the filing of the multiple offender bill until the defendant had exhausted his appeals. Ultimately, the enhanced penalty was not imposed until after the defendant had served his sentence and approximately nineteen months after the initial sentencing on the underlying charge.
Since there is a qualified overruling of those cases, and because in this case the prosecution moved swiftly in filing a multiple offender bill of information, I join the majority opinion in its decision in this case.
JOHNSON, Justice, dissenting.
As an initial matter, I must point out that this defendant has been sentenced to serve a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for access device fraud,[1]i.e., "identity theft." In my mind, such a harsh sentence for a non-violent offense runs afoul of the Eighth Amendment to the United States Constitution and may be more cruel than other countries which mandate chopping off a hand as the penalty for theft.
Moreover, at the time that this defendant was adjudicated a multiple offender, he was to be discharged from state custody on August 23, 2002. However, he was not released, as the habitual offender procedings had been initiated. It was not until December 17, 2002, nearly four months after his release date, that defendant was re-adjudicated and re-sentenced as a habitual offender.
Although the habitual offender law, contained within LSA-R.S. 15:529.1 does not contain a prescriptive period for the completion of habitual offender proceedings, this Court has historically required the State to complete habitual offender proceedings within a reasonable time. In State ex rel. Williams v. Henderson, 289 So.2d 74, 77 (La.1974), this Court set forth a bright line rule that "a proceeding to *58 have a defendant sentenced as a multiple offender must be completed before the defendant serves the sentence which is to be enhanced." Additionally, in State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986), the defendant had served his two year sentence before he was adjudicated a multiple offender. This Court, citing Williams, unequivocally stated, "Proceedings against a convicted defendant to enhance his sentence under R.S. 15:529.1 must be completed before he has satisfied his sentence on the underlying felony and been discharged from custody for that offense."
Like the defendants in Williams and Glynn, this defendant's sentence had been served before his adjudication as a multiple offender. I do not believe that there is any compelling reason to overrule Williams and Glynn, particularly where the defendant was not convicted of a violent offense.
For these reasons, I agree with the court of appeal's determination that defendant's life sentence should be vacated.
NOTES
[1] Due to credit for time served, defendant's original diminution of sentence date was listed as August 24, 2000. The expiration of defendant's full-term date was August 23, 2002.
[2] The record reveals the multiple offender bill charging defendant Mustafa Muhammad as a third felony offender was filed on April 9, 1999.
[3] The reasons dated and signed April 9, 1999, by the trial judge indicate the defendant was found to be a fourth felony offender and sentenced under the provisions of LSA R.S. 15:529.1(A)(c)(ii) to life imprisonment without benefit of probation, parole, or suspension of sentence. However, review of the transcript of the hearing indicates the trial judge found defendant's most recent conviction of the 17 counts of access device fraud made him a fourth felony offender, but when the judge imposed sentence on the defendant, he did so as follows:

[H]e comes under the provisions of 15:529 Alarge capital A, part 2, small b, small 2. "If the third felony or either of the two prior felonies is a felony defined as a crime of violence under Revised Statute 14:2, (13), or a violation of the Uniform Controlled Dangerous Substance law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life without benefit of parole, probation or suspension of sentence."
[4] From sentencing on August 9, 1999, until an order of appeal was signed on March 2, 2000, a period of seven months, defendant's case was inactive as no action was taken by defense counsel to advance the oral motion for appeal which had been made at the sentencing hearing.
[5] The court of appeal found reversible error patent. The habitual offender bill of information charged defendant as a multiple felony offender listing two prior felony convictions. At the hearing, evidence was introduced to prove that defendant had been convicted of three prior felonies and was thus a fourth felony offender. The court of appeal found the trial court had improperly sentenced defendant as a fourth felony offender.
[6] The portion of the decision affirming the underlying access device fraud convictions and original sentences is final. Only the portion of the decision regarding the propriety of the multiple offender proceeding remains viable.
[7] During the first appeal, the State alleged that an amended multiple offender bill of information charging defendant as a fourth felony offender had been filed on June 25, 1999, but was not contained in the record. The State unsuccessfully attempted to file an affidavit to that effect along with an unsigned copy of the amended bill with the court of appeal.
[8] Again, defendant's case was inactive for eight months following the May 18, 2001 hearing as no action was taken by defense counsel to advance an appeal until defendant's counsel filed a motion to withdraw as counsel of record and have the Louisiana Appellate Project appointed as counsel to represent defendant on appeal.
[9] We note the trial judge has the right to take judicial cognizance of any prior proceeding which is part of the same case he has previously tried. State v. Jones, 332 So.2d 461, 463 (La.1976). The same trial judge presided over the jury trial and both habitual offender proceedings.
[10] Mr. Muhammad is subject to the provisions of the statute in effect as of the commission of the offense, which in this instance was April 1998. Although LSA-R.S. 15:529.1 has been amended twice since the commission of the instant offense, with amendments effective August 15, 2003, and June 15, 2001, those amendments do not apply to this case. State v. Parker, 03-0924 (La.4/14/04), 871 So.2d 317.

On the date of the commission of the offense for which defendant was charged and convicted, LSA R.S. 15:529.1 provided as follows:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(2)(a) Attempted first degree murder.
(b) Attempted second degree murder.
(c) Manslaughter.
(d) Armed robbery.
(e) Forcible rape.
(f) Simple rape.
(g) Second degree kidnapping.
(h) A second or subsequent aggravated battery.
(i) A second or subsequent aggravated burglary.
(j) A second or subsequent offense of burglary of an inhabited dwelling.
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
C. This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
D. (1)(a) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of Subsection A of this Section, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction or adjudication of delinquency. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b). The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, or adjudicated a delinquent for an offense or offenses specified above as set forth in the information.
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
(2) Following a contradictory hearing, the court shall find that the defendant is:
(a) A second offender upon proof of a prior felony conviction or adjudication of delinquency as authorized in Subsection A.
(b) A third offender, upon proof of two prior felony convictions or adjudications of delinquency as authorized in Subsection A, or any combination thereof.
(c) A fourth offender, upon proof of three or more prior felony convictions or adjudications of delinquency as authorized in Subsection A, or any combination thereof.
(3) When the judge finds that he has been convicted of a prior felony or felonies or adjudicated a delinquent as authorized in Subsection A, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling.
E. Whenever it shall become known to any superintendent or prison, probation, parole, police, or other peace officer, that any person charged with or convicted of a felony has been previously convicted or adjudicated delinquent within the meaning of this Section, he shall immediately report the fact to the district attorney of the parish in which the charge lies, or the conviction has been had.
F. The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
G. Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
H. A person shall not be qualified to be a candidate for elected public office or take elected office if that person has been convicted of a felony, whether convicted within this state or convicted under the laws of any other state or of the United States of a crime which, if committed in this state would be a felony, and has not received a pardon therefor.
[11] In State v. George, this court held the statute permitted an information to be filed and an accused sentenced as a multiple offender even after the original sentence had been served. Because the time spent in jail awaiting trial exceeded the sentence imposed, the defendant in George was discharged the same day he was sentenced. Relying on the language of the statute,

'If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony * * *, it shall be the duty of the District Attorney of the Parish in which subsequent conviction was had, to file an information * * *. Whereupon, the court in which such subsequent conviction was had, shall cause the said person, whether confined in prison or otherwise, to be brought before it * * *.'
George, 218 La. at 30, 48 So.2d at 269, the court ruled the habitual offender proceeding was timely. Had the court ruled otherwise, the State would have been precluded from charging the defendant as a multiple offender. The record indicated the State filed a multiple offender bill and the defendant was resentenced approximately one month after imposition of the original sentence.
[12] In State ex rel. Williams v. Henderson the defendant argued Section (D)(3) contemplates completion of the proceedings prior to defendant serving the entire sentence. The statute provides, "the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated." As the defendant argued in State ex rel. Williams v. Henderson, unless a portion of the original sentence remains executory, there is nothing left for the court to vacate before sentencing the defendant as a habitual offender.

We fail to find this language sufficiently specific to require a bright line rule that the habitual offender proceeding be completed before serving the underlying sentence; this language simply contemplates the defendant will receive credit for the time served before the habitual offender sentence is imposed.
[13] The court found defendant had been convicted of two counts of burglary in 1978, robbery in 1983, and robbery in 1989 prior to the current conviction for 17 counts of access device fraud.
[14] La. Const. Art. I, § 16 (1974); U.S. Const., amend. VI.
[15] As observed by Justice Summers in dissent:

The plain language of the Habitual Offender Law permits an accusation for a previous conviction "at any time, either after conviction or sentence". La.R.S. 15:529.1, subd. D.
....
In the exercise of its sovereign power the State's Legislature authorized the bringing of this accusation "at any time, either after conviction or sentence", and it is an abuse of this Court's power to refuse to apply the law as written. Habitual offender laws are designed to protect society from the continuing activities of recividist offenders...."
[1] "Access device" means a person's social security number, driver's license number, birth date, mother's maiden name, checking account numbers, savings account numbers, personal identification numbers, electronic identification numbers, digital signatures, or other means of account access that can be used to obtain anything of value, whether contemporaneously or not. LSA R.S. 14:70.4(D)(1).