MADELEINE M. LANDRIEU, Judge.
11 Kerry Cureaux was convicted by a jury trial of possession of heroin on June 2, 2010 and was sentenced to seven years at hard labor on August 13, 2010. On November 4, 2011, Mr. Cureaux was adjudged a fourth felony offender. Three days later on November 7th, he was resen-tenced to twenty years. Mr. Cureaux appealed, and on May 1, 2013, this court reversed the habitual offender adjudication, finding that neither the appellate record nor the district court record contained the multiple bill of information, and there was no evidence that a written bill charging Mr. Cureaux as a fourth offender actually had been filed or that Mr. Cureaux had adequate notice that he would be charged as a fourth offender. See State v. Cureaux, 2012-0335, p. 15 (La.App. 4 Cir. 5/1/13), 116 So.3d 833, 841, writ denied, 2013-1270 (La.12/2/13), 126 So.3d 499.[1] *230 This court vacated the habitual offender sentence and reinstated the defendant’s original seven-year sentence. Id., p. 15, 116 So.3d at 841. Approximately two weeks later, on or |gabout May 16, 2013, Mr. Cureaux was released on parole. That same day, the State filed a multiple bill of information charging Mr. Cureaux as a triple felony offender, and five days later, on May 21, 2013, the State withdrew that bill and filed a superseding multiple bill charging him as a fourth felony offender.
Mr. Cureaux moved to quash the multiple bill as untimely. The motion to quash was argued on August 26, 2013, and was denied on September 6, 2013.[2] On September 27, 2013, a second habitual offender hearing was conducted. On December 2, 2013, the trial court again found Mr. Cureaux to be a fourth felony offender and sentenced him to serve twenty years.[3]
Mr. Cureaux now appeals his habitual offender adjudication and sentence.

DISCUSSION

The facts of the appellant’s underlying arrest and trial for possession of heroin are not germane to the issues on appeal. Mr. Cureaux raises two assignments of error:
1. The trial court erred by denying his motion to quash the May 21, 2013 multiple bill as untimely, thus allowing the second habitual offender adjudication to proceed.
2. His enhanced sentence of twenty years, which resulted from that habitual offender adjudication, is excessive.
I. Denial of Motion to Quash
|sIn reviewing trial court rulings on motions to quash that involve factual determinations, such as speedy trial violations and nólle prosequi dismissal/reinsti-tution cases, appellate courts apply an abuse of discretion standard. State v. Simmons, 2013-0312, p. 4 (La.App. 4 Cir, 10/16/13), 126 So.3d 692, 695. (citing State v. Hall, 2013-0453, p. 11 (La.App. 4 Cir. 10/9/13), 127 So.3d 30, 39). Mr. Cureaux argues the trial court abused its discretion by refusing to quash the second habitual offender bill as untimely.
The Habitual Offender Law provides, in pertinent part: “If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ... the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction.” La. R.S. 15:529.1(D)(l)(a) (Emphasis added). The text of the statute does not provide a specific time limit within which a multiple bill must be filed. However, the Louisiana Supreme Court has held that in light of Louisiana Code of Criminal Procedure article 874, which requires that criminal sentences be imposed “without unreasonable delay,” and the defendant’s constitutional right to a speedy trial, “the multiple offender bill must be filed within a reasonable time after the necessary information is available to the appropriate district attorney.” State v. Muhammad, 2003-2991, p. 14 (La.5/25/04), *231 875 So.2d 45, 55 (quoting State v. McQueen, 308 So.2d 752, 755 (La.1976)). In Muhammad, the Court reversed prior jurisprudence holding that a multiple bill had to be filed before the defendant had completed serving his original sentence. The Court reasoned: “In lieu of a bright line rule which has no statutory basis, we find an evaluation of the circumstances surrounding the multiple offender proceeding should be conducted on a case by case basis. In the | ¿process, the court can assure that defendant’s due process rights are protected. Any inordinate delays or bad faith on-the part of the State to prejudice the defendant in any fashion would be subject to the scrutiny of the court.” Id., 2003-2991, p. 13, 875 So.2d at 54. The Muhammad Court further stated that “relevant speedy trial considerations may be used to assist the court in a determination of whether any delays are unexplained or extraordinarily long. Abusive or vindictive delay should not be tolerated.” Id., p. 15, 875 So.2d at 55. The Court noted that the relevant considerations, as cited in Barker v. Wingo, 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972), are: (1) when prosecutors discovered the prior convictions; (2) the length of the delay and the reasons therefor; (3) whether the delay caused prejudice to the defendant; and (4) whether the defendant asserted his right to a speedy adjudication. Id., p. 14, 875 So.2d at 55. Although “these factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.” Id., p. 15, 875 So.2d at 55.
In the case before us, Mr. Cureaux argues that the information necessary to the filing of a multiple bill was available to the State, at the latest, by August 13, 2010, the date he was first sentenced. His first multiple bill hearing did not occur until approximately fifteen months after that, in November of 2011, at which time Mr. Cu-reaux was resentenced to twenty years. The State filed the current multiple bill on May 21, 2013, three weeks after this court’s May 1, 2013 decision that vacated the first multiple offender sentence. Mr. Cureaux was resentenced to twenty years on December 2, 2013. Mr. Cureaux now argues that his right to a | r,speedy trial was violated by the delay between his original sentencing in August of 2010 and his December 2, 2013 sentencing on the current multiple bill.[4]
After considering the four Barker factors in regard to the circumstances of this case, we find that Mr. Cureaux has failed to establish that his right to a speedy trial was violated. The total delay was just short of three years and four months. With regard to the time preceding the first multiple bill hearing, the record shows that the hearing was continued three times at the request of the defense, and Mr. Cu-reaux never timely objected to any postponements of that hearing. After the filing of the second multiple bill, the defense moved to continue the hearing five times, *232 and the record shows no objection by Mr. Cureaux to any of the other continuances. In Muhammad, supra, the Court reasoned that the approximately three and one-half year delay was partly attributable to the defense and found nothing in the record to establish abuse on the part of the State. Recently, in State v. Richardson, 2014-0754, pp. 17-18 (La.App. 4 Cir. 11/26/14), 155 So.3d 87, this court held that a delay of approximately thirty-two months between the State’s filing of a multiple bill and the defendant’s adjudication as a multiple offender was not untimely, specifically noting that the defendant had presented no evidence to show the State acted in bad faith, used dilatory tactics, or was abusive or | ¡^vindictive. Mr. Cureaux has not put forth any evidence to establish undue delay or deliberate misconduct by the State.
Moreover, most of the delay that occurred after the first multiple bill hearing was attributable to the appellate process. Mr. Cureaux has submitted no evidence to show that the State intentionally or knowingly failed to file a written multiple bill. In the absence of any such evidence, we cannot attribute the delay caused by the appellate process to the State.
Additionally, Mr. Cureaux was aware, at least by the time of the first multiple bill hearing adjudicating him a fourth offender, that the State was pursuing habitual offender status. Only fifteen months had elapsed at that time. Mr. Cureaux does not contend in this appeal that he lacked adequate notice of the second multiple bill proceeding.
For these reasons, we find the trial court did not abuse its discretion by denying the motion to quash and allowing the second multiple bill proceedings to go forward.
II. Excessiveness of Sentence
In State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1, the Louisiana Supreme Court set forth the standard to be used in evaluating a claim of an excessive sentence. The Court stated:
Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
|72001-2574, pp. 6-7, 839 So.2d at 4 (internal citations omitted).
In this assignment of error, Mr. Cu-reaux argues that his sentence of twenty years is unconstitutionally excessive, especially considering that his underlying offense was for possession of illegal drugs that were intended for his own personal use. Mr. Cureaux was sentenced to the minimum sentence allowed for a fourth felony offender.[5] The mandatory minimum sentences provided by the Habitual Offender Law are presumed to be constitutional; the defendant has the burden of rebutting this presumption by showing that his case is exceptional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676-77. The mandatory minimum sentences set forth by the legislature have been upheld repeatedly in cases where all of the defendants’ convictions were for *233 drug and/or non-violent offenses. See, e.g., State v. Johnson, supra; State v. Noble, 2012-1923 (La.4/19/13), 114 So.3d 500; State v. Vincent, 2010-0764 (La.App. 4 Cir. 1/19/11), 56 So.3d 408. Unlike those defendants, Mr. Cureaux’s prior convictions include guilty pleas to simple robbery and accessory after the fact to armed robbery, both crimes of violence. He has not demonstrated exceptional circumstances as would warrant a downward departure from the mandatory minimum sentence. Thus, Mr. Cureaux’s sentence is not excessive, and the trial court did not abuse its discretion by so sentencing him.
CONCLUSION
For the reasons stated, Mr. Cureaux’s habitual offender adjudication and sentence are affirmed.
AFFIRMED.

. The fifteen-month delay between the original sentencing and the multiple bill hearing was explained by this court in Mr. Cureaux’s prior appeal as follows: “The case was reset repeatedly for over a year due to the fact that the defendant was incarcerated in another parish, and it was not until almost fifteen months later that the multiple bill hearing was held. There is nothing in the minute entries of these dates that indicates that the State ever actually filed a multiple bill of information, and when the hearing was finally held, the defendant did not object that no bill had been filed.” 2012-0335, p. 14, 116 *230 So.3d at 841, writ denied, 2013-1270 (La.12/2/13), 126 So.3d 499.

. This court denied Mr. Cureaux's writ application seeking review of that decision. State v. Cureaux, unpub. 2013-1338 (La.App. 4 Cir. 10/8/13).

. Mr. Cureaux’s prior convictions include possession of stolen goods, accessory after the fact to armed robbery, and simple robbery.

. Mr. Cureaux further asserts that under State ex. rel. Williams v. Henderson, 289 So.2d 74 (La. 1974), and later, under State ex. rel. Glynn v. Blackburn, 485 So.2d 926 (La. 1986), proceedings intended to enhance a defendant’s sentence must be completed before the sentence for the underlying felony is satisfied and the defendant is discharged from custody. However, as previously stated, this "bright line rule” was abrogated by State v. Muhammad, which overruled the prior cases and held that each defendant's situation should instead be evaluated on a case-by-case basis. 2003-2991, p. 2, 875 So.2d at 47. Moreover, the former "bright line rule” would not have been applicable in this case because Mr. Cu-reaux did not complete his sentence; he was released on parole. See State v. Dominick, 94-1368, p. 2 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, 2; State v. Grimes, 2001-0576, p. 15 (La.App. 4 Cir. 5/2/01), 786 So.2d 876, 885.

. See La. R.S. 15:529.1(A)(4)(a).