Johnson, Chief Justice,
dissents and assigns reasons
hi respectfully dissent and would deny the writ because the state has shown no abuse of discretion in the trial court’s denial of the state’s motion to prohibit the defense from referencing the possible life sentence that defendant will all but certainly face if convicted and adjudged a habitual offender.
It has long been settled that it is within the trial judge’s discretion, in instances in which a specific punishment is not statutorily mandated, to permit or deny instruction or argument as to sentencing.[1] The majority has accepted the invitation of the Orleans Parish District Attorney’s Office to establish a new per se rule which will substantially limit trial court discretion to control the information given to the jury. Under this new rule, any reference— whether by the court or in argument from the parties—to the enhanced sentence a defendant will face if he is | ¡.convicted and adjudged a habitual offender, will be impermissible, unless perhaps the defendant elects to testify and subject himself to cross-examination about his prior convictions.
The trial court has the discretion to permit or prohibit references to sentencing, other than for those sentences auto *826 matically mandated by statute, because the trial judge sits in the best position to determine whether the penalty .provisions at issue, including those applicable under the Habitual Offender Law, constitute “law applicable to the case,”[2] of which the jury should be apprised under the circumstances of the particular prosecution.
I am unpersuaded that the trial court abused its discretion here by refusing to prohibit the defense from referencing the potential habitual offender sentence, especially in light of the overwhelming evidence that the Orleans Parish District At-' torney’s Office almost reflexively (through his-assistant district attorneys) institutes habitual offender proceedings upon securing the conviction at trial of a defendant with a'prior felony. The prosecuting attorneys in Orleans Parish routinely wield the Habitual'Offender Law, both during pretrial plea negotiations and, .in the event that tactic fails to.yield a guilty plea, after obtaining a conviction, at trial, to secure the harsher punishment of even non-violent offenders.
The Pew Charitable Trusts have examined the Habitual Offender Law and its impact on Louisiana’s incarceration rate[3] and found the number of newly-l ^sentenced defendants who have-received substantially enhanced punishments uncjer the law has more than doubled over the past 10 years.[4] Even more concerning, the majority of these defendants come from just a handful of parishes. The biggest contributor, by far, has been Orleans Parish. In 2015, Orleans Parish surpassed every other judicial district in the state in its use of the Habitual Offender Law, sending 154 offenders to serve lengthy prison sentences.[5] This figure reflects a shocking 15-fold increase over the year 2006, during which just 10 offenders from Orleans Parish were sentenced under the law,[6] Although the law represents an important means of protecting public safety and punishing recidivism, this data reveals the unfortunate truth that the weightiest penalties are not being reserved for the most serious crimes or the most dangerous offenders, particularly in Orleans Parish. To the contrary, drug possession is the most common primary offense for newly-sentenced prisoners convicted under the Habitual Offender Law.[7] *827 According to the Louisiana Legislative Auditor’s Office, 78% of habitual offender convictions are for non-violent offenses, though some of those offenders may have had prior violent offenses.[8] Given these facts, it can |.(hardly be labeled as mere conjecture that the District Attorney’s Office will again invoke the Habitual' Offender Law if it obtains a conviction in this case.
I also find it fundamentally unfair that the District Attorney has apparently adopted a policy by which his staff leverage the threat of enhanced punishment while seeking to extract guilty pleas with one hand, as was done in this case, while later seeking with the other hand to vigorously keep a defendant who has elected to exercise his right to a jury trial from mentioning the life sentence he will face if convicted and adjudged as a recidivist, by arguing that the possibility of such an enhanced sentence is simply too remote.
Even granting that a habitual ’offender hearing constitutes a separate proceeding, to conclude that the jury is an unfit audience for any references to the potential habitual offender sentence, because that putative fate is too attenuated from the case at bar, is’ to ignore the reality reflected in the statistics above. Though the majority portrays habitual offender proceedings as involving arduous hurdles for the state, Louisiana jurisprudence is plain that if the state files a habitual offender bill of information, as it has already indicated its intent to do here if it obtains conviction at trial, the trial court will have little option but to impose an enhanced punishment as mandated by R.S. 15:529.1, as long as the state has presented “any competent evidence” of defendant’s prior felony convictions and his identity as the person convicted. State v. White, 13-1525, p. 2 (La. 11/8/13), 130 So.3d 298, 300.[9] In this way, the highly likely sentencing outcome here appears more akin to those in the cases in which this Court has found that the judge Rmust inform the. jury of the sentence; a rule founded on the premise that the jury is entitled to know the certain consequences of its verdict. See State v. Milby, 345 So.2d 18, 21 (La. 1977) (“[If], upon conviction, the trial judge must impose a mandatory sentence^] .... the trial- court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than by the judge.”).
Finally, to the extent the majority expresses concern about allowing mention of a habitual offender sentence because it would infringe upon the right against self-incrimination, I find its concern misguided. A defendant who has elected to stand trial may waive his right not to -incriminate himself. The most common and direct means of such a waiver is by his taking the stand and testifying, however, neither the state nor the majority specify’ any authority providing that this is the sole means of effecting the waiver. Furthermore, I reject the notion that a right that is intended to *828 protect a defendant may be used against him by the prosecution in this manner, ie., to keep what appears to be an all-but-inevitable habitual offender sentence from the jury under the pretense of effectuating this Fifth Amendment protection. Even the state has conceded that in cases in which a defendant elects to testify (a fact which remains to be seen here) and thereby expose himself to cross-examination about past convictions, he would thereafter be entitled to reference any enhanced punishment he would face as a recidivist.
Because the Louisiana jurisprudence is clear that it is within a trial judge’s discretion to permit instruction or argument as to sentencing in a case like this, and because the state has not shown any convincing reason specific to this case (let alone one which would not also apply in any number of prosecutions in Orleans Parish) that the trial court abused its discretion, I would deny the state’s writ and leave intact the trial court’s ruling. The majority’s new rule will only foster the ^continued overuse of the Habitual Offender Law at a time when our state can scarcely afford it.
In fiscal year 2015, Louisiana spent over $680 million on incarceration, an increase of more than $25 million over the prior year.[10] Continued abuse of the Habitual Offender Law serves only to exacerbate this already unsustainable burden that Louisiana taxpayers have been forced to shoulder to incarcerate more offenders than any other state, per capita. As I explained in State v. Johnson, 96-3041 (La. 3/4/98), 709 So.2d 679, 682, the Habitual Offender Law serves no worthwhile goal when, as appears likely in the instant case, it is used to extract a disproportionately harsh punishment for a less serious offense.
I am still amazed that the defendant in Johnson, 96-3041, supra, is required to serve a shockingly disproportionate sentence of 26 years and eight months, a punishment which effectively requires that he spend the bulk of his remaining years in prison, merely for stealing a cheap pair of shoes. I will feel a similar sense of shock and dismay if the defendant here is ultimately sentenced to life as a habitual offender for a narcotics offense. The time has long since come for us to stop adding to the overflowing ranks of those sentenced to extremely lengthy terms for property and drug crimes. I remain firmly convinced that such results are not only draconian, but an unjustified waste of taxpayer dollars that violate the constitutional prohibition on excessive punishment. See, e.g., State v. Muhammad, 03-2991, p. 1 (La. 5/25/04), 875 So.2d 45, 57 (Johnson, J., dissenting) (within days of completing his original net term of four years imprisonment for access device fraud, essentially “identity theft,” the state filed a habitual offender bill and defendant was adjudged a recidivist and resentenced to life imprisonment, a sentence possibly more cruel than the punishment meted out in countries that 1 /‘mandate chopping off a hand as the penalty for theft.”); State v. Parker, 03-0924, p. 1 (La. 4/14/04), 871 So.2d 317, 329 (Johnson, J. dissenting). The jail space that defendant will all but certainly occupy for the remainder of his life, if found guilty and adjudged a recidivist, should instead be reserved for a violent criminal. Now, more than ever, we must abandon all practices which result in condemnation to a life behind bars for anyone other than the most dangerous among us.

. See State v. Jackson, 450 So.2d 621, 633-34 (La. 1984); State v. Williams, 420 So.2d 1116, 1122 (La. 1982); State v. Dawson, 392 So.2d 445, 447-48 (La. 1980) (rejecting as meritless the argument that the trial court erred when it instructed jury as to the "irrelevant" penalties for responsive verdicts, in addition to the mandatory sentence for the charged offense, because the "charge to the jury concerning the penalties for the responsive verdicts was within the trial court’s discretion.”); State v. Bell, 377 So.2d 275, 282 (La. 1979) (within trial court discretion whether to refuse argument involving penalties); State v. Blackwell, 298 So.2d 798, 804 (La. 1973) ("Our law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge.”); see also State v. Cooper, 96-0119, p. 12, (La.App. 3 Cir. 7/17/96), 678 So.2d 59, 66 (decision to include in the jury instructions the penalties for the charged offense and for all lesser included offenses rested within the trial judge’s discretion), writ denied, 96-2121 (La. 1/24/97), 686 So.2d 857.

. See La.C.Cr.P. art. 774 (“The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or défendant may draw therefrom, and to the law applicable to the case") (emphasis added); cf. La.C.Cr.P. art. 802 (the coiirt ■ shall charge the jury as to the law applicable to the case),

. The study was conducted in accordance with House Bill 82 of the 2016 Legislative Session convening the Justice Reinvestment Task Force, The Task Force has been ■ charged to analyze the drivers of the state's prison population. Surveying 10 years of data from the Department of Corrections and Public Safety, Pew has concluded that offenders sentenced under the habitual offender law represent a small yet growing share of prison admissions. See Pew Charitable Trusts, Louisiana Data Analysis Part II; Prison Trends Cont. (September 23, 2016) (citing Department of Corrections data from 2006-15).

. While in 2006,' 157 prisoners faced enhanced punishment under tjie law, the number of defendants sentenced as recidivists had risen to 365 by 2015. Id.

. Id.

. In comparison, the Pew data shows that Jefferson Parish District Attorney Paul Con-nick convicted 116 offenders under this statute in 2015, while St,..Tammany and Washington Parish charted a combined 64 newly-sentenced prisoners under the habitual offender law. None of the other 39 parishes in the state sentenced more than 3 people as habitual offenders last year. Id.

. 2015 Department of Corrections data shows that nearly three quarters of habitual offender admissions have a primary drug or property offense, while just 14% have a violent primary offense, with 10% being defined as other.

. Louisiana Legislative Auditor, Evaluation of Strategies to Reduce Louisiana’s Incarceration Rate and Costs for Nonviolent Offenders (Aug. 31, 2016), available online as of Feb. 6, 2017 at https://app.lla.state.la.us/PublicReports.nsf/ DB26F2309F9783F2862580200077A2 CD/$FILE/00010B73.pdf.

. In White, the Court, explained that "[t]o meet its burden under the Habitual Offender Act, the State must establish both the prior felony conviction and the defendant's identity as the same person who committed that prior felony,” but made, abundantly clear that the habitual offender law does not require any specific type of evidence to satisfy the state's burden at the habitual offender hearing. Rather, the defendant’s prior convictions "may be proved by any competent evidence." Id. 1525, p. 2, 130 So.3d at 300.

. Legislative Auditor, Evaluation of Strategies, supra.