JOY COSSICH LOBRANO, Judge.
I,On October 12,-2010, the State of Louisiana (“State”) charged- the defendant, Troy Ellis (“Defendant”), with two counts *357 of simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2.[1] On January 12, 2012, Defendant was found guilty as charged by a verdict of 10-2 and was subsequently sentenced to. .twelve years at hard labor.[2]
On January 14, 2014, the State filed a habitual offender bill of information alleging that Defendant was a fourth felony offender, predicating the multiple offender bill on three prior alleged convictions: possession with intent to distribute cocaine and possession of phencyclidine (“POP”) in 1989; simple burglary of a hospital and its dialysis unit in 1998; and theft of a laptop in 2004. Defendant filed a motion to quash alleging that the State was untimely in filing the multiple bill.
On March 31, 2014, the - multiple bill hearing was held. After hearing argument, the district court denied Defendant’s motion to quash the multiple, bill. The State then called an expert in the field of latent fingerprint ¿nalysis -and Dcomparison, who reviewed the fingerprints from Defendant’s certified arrest registers in prior charges and determined that the fingerprints were from Defendant. The State also submitted the finger print cards, certified arrest registers and certified packets from Defendant’s prior arrests. After reviewing the evidence, the district court adjudicated Defendant to be a fourth felony offender subject to a mandatory minimum sentence of life imprisonment pursuant to La. R.S. ,15:529.1.
The court then addressed Defendant’s pending “Motion for Downward Departure from the Statutory Minimum Established by the Habitual Offender Law.”[3] Without any testimony or evidence presented, and without a presentence investigation (“PSI”) report being prepared, the district court denied Defendant’s motion for downward departure, noting that Defendant’s prior convictions implicated La. R.S. 15:529.1(A)(4)(b), which provides for a mandatory minimum sentence of life in prison. The district court then vacated Defendant’s previous sentence and imposed a life sentence without benefit of parole, probation, or suspension of sentence. , .
After Defendant moved for an appeal, ' the district court granted the motion and appointed the Louisiana Appellate Project to represent Defendant on appeal. A notice of appeal was timely filed. Subsequently/ a motion to reconsider sentence was filed but not ruled upon. 'Defendant appeals the district court’s denial of his motion to quash the multiple bill of information and his sentence to life imprisonment as -a quadruple offender.
For the reasons that follow, we affirm the district court’s denial of the motion to quash but find the district court abused its discretion when it failed tojjhold a full and meaningful hearing on Defendant’s motion for downward departure in light of Defendant’s life circumstances, long-term addiction, and non-violent criminal history. We therefore vacate Defendant’s life sentence and remand for resentencing with instructions for the district court to hold a proper *358 hearing and to comply with La;C.Cr.P. art. 894.1(C).
The facts of this case are" set forth in this Court’s opinion in State v. Ellis, 2013-1401, p. 1-6 (La.App. 4 Cir. 2/4/15), 161 So,3d 64, 66-71, writ denied, 2015-0489 (La.1/15/16), 2016 WE 531517.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In Defendant’s first assignment of error, he argues that the district court abused its discretion in denying his motion to quash the multiple bill of information because the State’s delay in filing the multiple bill was unreasonable, thus violating his due process rights.
Recently, in State v. Richardson, 2014-0754, pp. 14-15 (La.App. 4 Cir. 11/26/14), 155 So.3d 87, 95, writ denied, 2015-0106 (La.11/6/15), 180 So.3d 306, this Court recognized that if factual findings are made by the district court with.respect to a motion to .quash, as is the case here, a reviewing court applies an abuse of discretion standard. See also State v. Hall, 13-0453, pp. 11-12 (La.App. 4 Cir. 10/9/13), 127 So.3d 30, 39 (in cases where motions to quash involve factual 'determinations— such as speedy trial violations and nolle prosequi dismissal-reinstitution cases — this court applies an abuse of discretion standard.)
The Defendant’s assertion that the State’s delay in filing the multiple bill was unreasonable is based upon the following procedural history:
UOn January 12, 2012, the day Defendant was found guilty, a multiple bill hearing was set for March 2, 2012.[4] The multiple bill hearing was thereafter delayed on numerous occasions. On March 1, April 12, April 19, June 6, June 22, July 11, July 27, July 30, 2012, and October 2, 2012, the multiple bill hearing was re-set due to defense continuances.[5] The multiple bill hearing was also re-set on May 4 and June 28, 2012, because Defendant did not appear. ' On August 29, 2012, the court was closed because Hurricane Isaac struck the New Orleans area.
The docket master'also shows that on May 4, 2012, Defendant filed a discovery motion, a motion for downward departure, a motion for post-verdict judgment of acquittal and/or motion for new trial, and a motion to quash the multiple bill of information.[6] On July 30, 2012, Defendant filed a motion for a mistrial and/or motion to declare La.C.Cr.P. art. 782 unconstitutional.[7] Defendant was sentenced on Septem *359 ber 19,-2012, to twelve years at hard labor, to run concurrently with any other sentence, with credit for time served.[8] On that date, a 1 ¿multiple bill hearing was set for October 3, 2012 but subsequently was re-set for October 10, 2012.
On October 10, October 29, December 6 of 2012, and February 1, March 8, April 12, April 26, May 31, July 12,[9] August 8, September 5, October 16, and November 22 of 2013, the matter was continued when Defendant was in custody but not brought to court. On March 22, 2013, court was not in session, and the multiple bill hearing was again rescheduled.
On January 10, 2014,' the State filed a multiple bill, charging Defendant as a quadruple offender. Also on that date, the hearing on the multiple bill was re-set for February 11, 2014 as Defendant was in custody but not brought to court. However, the minute entry for January 10, 2014 indicates that'the State also made an oral motion for continuance on'that date, which the district court granted. On February 11,2014, the matter was continued because Defendant was in custody and not brought to court. Defendant appeared with counsel and filed a second motion to quash the multiple bill on February 18, 2014, on which date a status conference was also held. ■
On March 10, 2014, the State requested four sets of records from the clerk of court by March 12, 2014. On March" 12, 2014, the State moved to re-set the hearing to March 13, 2014, because the clerk’s office had been unable to locate records requested by the State. The multiple bill hearing was continued on March 13 and 14, 2014, because the State had not yet received records - from the Clerk of Court. On March 14, 2014, Defendant appeared but the hearing was continued to March 21, 2014 because the records had not been located. On March 21, 2014,. | ^Defendant did not appear, and the hearing was set for March 27, 2014,. On March 27, 2014, Defendant was in custody and not' brought to court, and the matter was continued to .March 31,2014.
The multiple bill hearing was ultimately held on March 31, 2014. • On that date, the district court denied Defendant’s motion to quash the multiple bill and adjudicated Defendant to be a fourth offender. After denying Defendant’s motion for downward departure; the district court vacated Defendant’s prior sentence of twelve years and imposed a life sentence without benefit of parole, probation, or suspension of sentence.
Defendant was sentenced as a multiple offender under the provisions of La. R.S. 15:529.1, which provide, in pertinent part:
A. Any person who, after having been .convicted within this state of a felony, or who, after having, been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
[[Image here]]
(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by *360 imprisonment for any term less than his natural life then:
* * ⅝
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S". 15:540 et sbq. when the victim is under the age of eighteen at the time of commission of the offense, or as á violation of the , Uniform Controlled Dangerous Substances Law;punishable by ipipris-onment.for ten years or more, or of any. other crime punishable by imprisonment for twelve years or,more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. ,
\fd. (emphasis added). Defendant’s life sentence, therefore, is the mandatory minimum sentence he could receive pursuant to Louisiana’s Habitual Offender Laws.
La. R.S. 15:529.1 D(l)(a) provides that a multiple bill may be filed “at any time, either after conviction or sentence.” Although the statute does not prescribe a time within which the multiple bill must be filed, this court has made a determination that ‘“the district attorney must file the habitual offender bill within a reasonable time.’” State v. Muhammad, 2003-2991, p. 14 (La.5/25/04), 875 So.2d 45, 55 (quoting State v. McQueen, 308 So.2d 752, 755 (La.1975)). See also La.C.Cr.P. art. 874 (“Sentence shall be imposed without unreasonable delay.”) Although “[t]he determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case,” an important factor in the reasonableness analysis “requires a determination of when the district attorney acquired the knowledge that defendant is a multiple offender.” Muhammad, 2003-2991, p. 14, 875 So.2d at 55.
Defendant argues that there was a two-year delay from the time of the verdict, January 12, 2012, and the time that the State filed the multiple bill of information, on January 10, 2014 and a sixteen-month delay between the time of sentencing, on September 19, 2012, and the filing of the multiple bill. Therefore, Defendant argues that the State’s delay in filing the multiple bill was unreasonable pursuant to La.C.Cr.P. art. 874 and was a violation of Defendant’s due process rights.
Defendant also argues that the district court erred in applying the speedy trial factors set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to a motion to quash for a delayed multiple bill filing ánd in finding |Rthat, pursuant to those factors, Defendant was required to assert his rights by invoking the supervisory jurisdiction of this Court[10] and to show prejudice from the delay. Defendant contends that the Barker factors should not apply because the multiple bill had not yet been filed, and he was therefore unable to assert his rights.[11]
*361 I ^Contrary to Defendant’s arguments, in Muhammad, ' the Louisiana .Supreme Court noted that application of the Barker factors to determine whether a multiple bill proceeding was; unduly delayed was instructive:
As a general matter, the- Supreme Court ■ has set forth four factors for courts to consider in determining whether a defendant’s right to-a speedy trial has been violated. Those, factors are the length of the delay, the reasons for the delay, the accused’s assertion of his right to speedy trial, and the prejudice to the accused resulting from the delay. Barker v. Wingo, 407 U.S. 514, 531-32, 92 S.Ct 2182, 2192-93, 33 L.Ed.2d 101 (1972). This court adopted the Barker factors in State v. Reaves, 376 So.2d 136 (La.1979). While these factors are neither definitive nor dispositive in the context of a. habitual offender proceeding, they are instructive.
Muhammad, 2003-2991 at pp. 14-15, 875 So.2d at 55 (emphasis added); see also State v. Buckley, 2011-0369, pp. 5-6 (La.App. 4 Cir. 12/27/11), 88 So.3d 482, 486 (recognizing . that ,“[t]he Louisiana Supreme Court has noted that while these [Barker ] factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.”)
Additionally, as the State notes, the Muhammad Court recognized that “relevant speedy trial considerations may be used to assist the court in a determination of whether any delays are unexplained or extraordinarily long.” Muhammad, 2003-2991 at p. 15, 875 So.2d at 55 (emphasis added). Thus, we find validity in' the State’s argument that the Barker factors are applicable to determine whether the delay in-filing-the multiple bill was unreasonable.
With regard to the assertion of the right to a séntencing without delay, the State relies upon the Barker Court’s finding that because the defendant in that case Imdid not object to the delays until over four years had passed, “the defendant did not want a speedy trial.” Barker v. Wingo, 407 U.S. at 534-36, 92 S.Ct, at 2194-95. *362 Similarly, in this case, the State argues that Defendant did not object to the delay. The State further submits that the defense moved to continue the multiple bill hearing on nine occasions: March 1, April 12, April 19, June 6, June 22, July 11, July 27, July 30, and October 2, 2012.: Thus, the State argues that the lack of objection to the delay and Defendant’s own significant .cause of the delay weigh against Defendant in the assertion of the right to a speedy sentencing.
With regard to prejudice caused by the sentencing delay, the State agrees with Defendant that he does not have an affirmative obligation to. demonstrate prejudice, but argues'that meaningful prejudice is not presumed from the delay itself. Additionally, the State argues that this Court, in Buckley and McNeal, discussed infra, found that lengthy delays were not unreasonable when no prejudice, to the defendant was evident. The. State contends that, in any event, Defendant in this case did not suffer prejudice because he was on notice as of at least January of 2012[12] that the State intended to file a multiple bill.[13]
The State cites State v. Dominick, 94-1368, p. 3 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, 2, wherein this Court found that a defendant who had been released from prison and placed on parole for eleven days could be re-sentenced as a multiple offender because the defendant "had been incarcerated pre-trial and “knew In that the State intended :to multiple bill him at least from the time of the withdrawal of his guilty plea” and therefore “could not, have reasonably expected that he would be released on the' charge without- the imposition of an enhanced penalty.”[14]
With regard to the length of the delay and the reasons for the delay, the State concedes that the Louisiana Supreme Court has found that “[ajbusive or vindictive delays should not be tolerated.” Muhammad, 2003-2991 at p. 15, 875 So.2d at 55. The State also acknowledges that the record does not reveal a reason for the State’s delay in filing 'the multiple bill.[15] Nevertheless, the State argues, Defendant was aware of the State’s intent to file the multiple offender bill, and the failure to file the multiple bill did not prevent the State from setting a hearing date for the multiple bill at the conclusion of Defendant’s trial.
Furthermore, the- State submits that it was responsible for only two of the delays, which resulted in a total" delay of fourteen days.[16] The State argues that the multiple *363 bill hearing was re-set on approximately eighteen occasions when Defendant was not brought to' court, on two occasions when the court was closed, and on nine occasions when the defense requested continuances. The State contends that the delays in this case do not evidence abusive or vindictive- behavior on the part of the State and reiterates that Defendant failed to object or seek supervisory review. The State-further argues that the record does not evidence that |12had the multiple -bill been filed earlier, the hearing on the multiple bill would have occurred any earlier than it did. Furthermore, the State argues that the , fifteen-month period between sentencing and the filing of the multiple bill was not unreasonable on its face, relying in part on McNeal (discussed {infra ).
In State v. McQueen, 308 So.2d 752, 756 (La.1975), older jurisprudence that did not apply the factors set forth in Barker, the Louisiana Supreme Court found that a delay of three years and eight months before filing the multiple bill was unreasonable:
We find R.S. 15:529.1 requires- the Multiple Offender Bill to be filed within a reasonable time after the necessary information is available to the appropriate district attorney; that the failure of the district attorney to file the Multiple Offender Bill within a reasonable time after having the necessary information is not sanctioned by the statute, and is prohibited by C.Cr. P. Art. 874; that an unreasonable delay in filing the Multiple Offender Bill divests jurisdiction to have the defendant sentenced as a Multiple Offender; and that the unexplained delay of three years eight months -under the facts of this case is unreasonable.
In State v. Broussard, 416 So.2d 109 (La.1982), the delay in filing the multiple bill was thirteen months after the defendant’s original sentence. In reversing the trial court’s denial of the defendant’s motion to quash, the Broussard Court noted that the State offered no reason for- the delay and held that the State did 'not act reasonably when it did not file the multiple bill until after the defendant had served thirteen months of his original sentence and was anticipating release on., parole within a few months. Additionally, the defendant in Broussard was, in fact, released on- parole before the State could complete the multiple bill hearing. Broussard, 416 So.2d at 111. Although the Broussard Court did not specifically apply the Barker factors, the Court apparently found that the defendant had .been | ^prejudiced in being, released on parole before the multiple offender proceeding could be completed.
The State relies in part on State v. Toney, 2002-0992 (La.4/9/03), 842 So.2d 1083, wherein the Louisiana Supreme Court distinguished both McQueen and Broussard, finding that a seventeen-month delay between the filing of the multiple bill of information, and: the hearing on the multiple bill was not an unreasonable delay where 1 there was. no evidence that the State engaged.-in dilatory tactics nor was the defendant surprised by the filing of the multiple bill: ■
Ifi the instant case, we cannot say that dilatory tactics of the district attorney caused the delay between the filing of the multiple bill and the holding of the hearing because the record does not reflect the party- requesting most of the continuances.. What the record does reveal is that the district attorney set the multiple bill for hearing at least six separate times. Further, nothing in the record of this case indicates • that the ‘continuances were not justified. Finally, under the overall facts presented by this case, we see no great prejudice to the defendant caused by the delay. The *364 multiple bill was timely charged, alerting the defendant to the possibility that his sentence .would be enhanced.., Thus, the defendant was not caught by surprise.
State v. Toney, 2002-0992, p. 6, 842 So.2d at 1086.
The case of State v. Simmons, 2013-0312 (La.App. 4 Cir. 10/16/13), 126 So.3d 692, involved a delay in both the filing of the multiple bill of information as well as a delay in holding the multiple bill hearing.’ Recently,’ in State v. Richardson, 2014-0754, pp. 8-9 (La.App. 4 Cir. 11/26/14), 155 So.3d 87, 92, writ denied, 2015-0105 (La.11/6/15), 180 So.3d 306, this Court summarized the procedural history of Simmons:
.... In Simmons, the defendant was charged by bill of information with attempted armed robbery on 11 December 2009, and found guilty of same on 6 -December 2010. At trial* he testified that he had been convicted of a felony, armed robbery, in ■ Mississippi on 26 February 1997. The defendant, was sixteen years of age at the time. .On 27 January 2011, the defendant , was sentenced to twenty-one months at hard labor with credit for time served. A few days later, the | ^Mississippi Department of Corrections mailed documentation regarding the defendant’s prior felony conviction to the Orleans Parish District Attorney’s Office. Id., pp. 1-4, 126 So.3d at 693-694.
Although the state did not file a habitual offender, bill, a multiple bill hearing was set for 30 March 2011, at which time ■the defendant did not appear in court, and the state requested that the hearing be held on 11 April 2011. Thereafter, the hearing was continued on numerous occasions throughout 2011 and 2012. .The state filed a multiple offender bill of information on 9 February 2012. , On July 15, 2012, the defendant was released from prison after completing the sentence for the underlying charge of attempted simple robbery. Nearly a month later, the state filed another habitual offender bill of information, and a multiple bill hearing was set for 16 October 2012. On that date, a status hearing was scheduled for 31 October 2012, at which time a motion to quash the bill of information was set for hearing on 28 November 2012. Id.
The trial court granted the motion to quash. On appeal, the State argued that pursuant to State v. McNeal, 99-1265 (La.App. 4 Cir. 6/14/00), 765 So.2d 1113, the defendant was required to show prejudice. In McNeal, this Court found no prejudice in a delay of approximately two years from the date of the defendant’s conviction to the filing of the multiple bill of information:
In the case at bar, the State filed-the multiple bill of information almost two years after defendant’s conviction for armed robbery. During that time, the defendant was . not sentenced on- the original conviction. The defendant was found guilty of- armed robbery on September 1G,. 1996. The State eventually filed the multiple bill-of information on August 17,1998. A review of the record indicates that ■ defendant’s sentencing was continued three times on joint motion of- the State and the defendant. The last joint motion to continue was granted on June 29, 1998.’ The court reset the matter six other times. The record does not indicate which party sought to have the matter: reset on- these other occasions. ■
While almost two years elapsed between defendant’s .conviction and the filing'-of the multiple bill, the delay was not ■ prejudicial. The defendant - was convicted of armed robbery-apd was in- *365 carcemted at the time the multiple bill was filed. Although the defendant had not been sentenced on the original conviction prior to the filing of the multiple bill, the minimum sentence under La. R.S. 14:64, would have been five years at hard labor without benefit of probation, parole or suspension of sentence. Thus, even if .defendant had been sentenced to the minimum sentence on the original conviction, he would still have \ n,been incarcerated at the time the State filed the multiple bill. In addition, the defendant had pending charges of possession of a firearm by a convicted felon and first degree murder against him during .this time period. Therefore, it appears that the delay was not prejudicial and the trial court did not err when it denied defendant’s motion to quash.
State v. McNeal, 99-1265, pp. 8-9, 765 So.2d at 1118 (emphasis added).
In Simmons, the State also relied on State v. Buckley, 2011-0369, p. 7 (La.App. 4 Cir. 12/27/11), 88 So.3d 482, 487, wherein this Court determined that the defendant was not prejudiced when a multiple bill hearing was not held until, approximately three years after the defendant was sentenced because the State advised the defendant at the time of sentencing that a multiple bill would be filed, and the first multiple bill hearing was scheduled nearly four months after the defendant was found guilty. Simmons, 2013-0312, p. 5, 126 So.3d at 696.
Additionally, as in this case, the defendant in Buckley received a lengthy original sentence, and the continuances of the hearing on the multiple bill could be attributed to both the State and the defendant, as well as to the court itself: >
' The Simmons court recognized that in Buckley, the defendant was sentenced to twenty years, “making prejudice caused by the delay unlikely.” Id., p. 5, 126 So.3d at 696, n. 8. The court also noted ■that the Buckley court found that “the multiple bill hearing was continued numerous times on the motions of both the State and the defense, as well as by the court itself.” Id.
Richardson, 2014-0754 at p. 10, 155 So.3d at 92-93.
The defendant in Simmons árgued that the case was not similar to Buckley because he requested only one of the fifteen continuances; the State did not file the multiple bill of information until approximately one year after trial; and the State made- a minimal effort to determine the defendant’s location.1 Simmons, 20130312, pp. 8-9, 126 So.3d at 698. The defendant in Simmons contended 'that Broussard was applicable to his case:
The defendant also relied upon State v. Broussard, 416 So.2d 109, 111 (La.1982), wherein the1 Court held ‘that a thirteen-month delay iri’filing a habitual offender bill of information was unreasonable. The Simmons' Court noted that in Broussard, although the defendant’s prior convictions were obtained in the same parish during the district attorney’s tenure in office and information regarding same was available at the time of the original sentencing, the ' state, offering no reason for its delay, waited to file a habitual offender bill of information until the defendant served thirteen months of his original sentence and was awaiting parole. Simmons, p. 10, 126 So.3d at 699.
The defendant in Simmons, however, had completed his sentence and been released. Thus, the defendant argued that the facts were more egregious than those in Broussard, -and that notice' of the prior felony conviction alone did not remedy the prejudice he would suffer if the trial court’s ruling on-the motion-to quash was reversed, because pursuant to *366 Muhammad, McQueen, and La.C,Cr. P. art. 874, a multiple bill must be filed within a reasonable time after the state becomes aware of a defendant’s prior felony conviction. Simmons, pp. 10-11, 126 So.3d at 699-700.
Richardson, 2014-0764 at pp. 10-11, 166 So.3d at 93.
The Simmons Court affirmed the district court’s granting of the defendant’s motion to quash on the basis that the State, like the State in Broussard, was put on notice of the defendant’s prior conviction at trial; that the State failed to secure the defendant’s appearance in court on fifteen occasions even though the defendant was in custody; that the. State requested nine of the fifteen continuances; and that the State offered no reason for the delay. Simmons, 2013-0312 at p. 14, 126 So.3d at 701. This Court also noted that the multiple bill hearing had still not been held when the defendant was released from prison. Id. Accordingly, this Court found that the delay in adjudicating the defendant a multiple offender was “unreasonable” and “unduly prejudicial.” Id.
| ^However, in State v. Zachary, 2008-634 (La.11/21/08), 996 So.2d 631, a case where the delay (largely the result of protracted litigation) of five years after the first multiple bill setting and seven years after-the filing of the bill of information was attributed mainly to the defendant, the Louisiana Supreme Court held that the lengthy delay was reasonable when the defendant was aware- after being convicted that the State was going to pursue a multiple bill, and the State did not demonstrate bad faith or vindictiveness.
In Richardson, a recent case involving a delayed hearing on a multiple bill, ■ the defendant was charged on November 4, 2009, with possession of heroin and possession of cocaine, and found guilty on March 22, 2011. Richardson, 2014-0754 at p. 1, 156 So.3d at 88. On April 6, 2011; the defendant was sentenced to four years at hard labor, and the State filed a multiple bill of information that same day, charging the defendant as a fourth offender. The defendant did not appeal his conviction or sentence. Id. A hearing on the multiple bill was set for June 16, 2011; however, the hearing was re-set over twenty times. On February 28, 2013, the defendant filed a motion to quash and filed a second motion to quash on May 3, 2013. The motions were denied on December 18, 2013. The State amended the multiple bill to charge the defendant as a second offender, to which the defendant admitted. The defendant was subsequently sentenced to his agreed-upon sentence of nine years at hard labor. Id.
The Richardson defendant appealed, arguing that the trial court erred in denying his motions to quash. Id. at p. 4, 155 So.3d at 90. The State argued that' the defendant was not prejudiced because he had' not satisfied the terms of his sentence or been released from custody, and that the record did not evidence that the State unreasonably delayed the hearing or acted in bad faith. In affirming the | isdenial of the defendant’s motions to quash, this Court applied the Barker factors and deJ termined that the multiple bill was timely filed, and the defendant contributed to the majority of the delays in the case, as the State moved for only one continuance. Id. at pp. 15-18, 155 So.3d at 95-97. The Richardson Court considered that approximately two years had passed from the original sentencing until the multi-bill hearing (length of the delay); that the multiple bill hearing had been re-set many times with many of the continuances attributable to the defense (the reason for the delay); that the defendant had waited nearly two years before filing the motion to quash then moved to continue the hear *367 ing on the motion to quash on four occasions after filing the motion (accused’s assertion of his right to sentencing without delay); and that the defendant was not prejudiced by the delay iii that he was not surprised by the multiple bill, which had been filed shortly after sentencing and he had never been released from prison before the State filed to enhance his sentence (prejudice from the delay). M[17]
The reasoning of Richardson was recently followed by this Court in State v. Cureaux, 2014-0503 (La.App. 4 Cir 4/1/15), 165 So.3d 228, where the State did not hold an initial multiple offender hearing until fifteen months after the defendant was sentenced and, on appeal, there was nó record evidence that a multiple bill had actually been filed. This Court reversed the multiple offender adjudication and reinstated the defendant’s original sentence. Approximately two weeks later, the defendant was released on parole. That same day, the State filed {^multiple bill of information charging the defendant as a triple offender, withdrew that bill five days later and filed a superseding multiple bill charging him as a fourth felony offender. The defendant in Cureaux moved to quash the bill as untimely and the district court denied the motion and found him to be a fourth felony offender. On appeal,1 this Court upheld the district court’s decision to deny the motion to quash, despite a lengthy delay of nearly three years and four months between the defendant’s initial sentencing and his final adjudication and sentencing as a fourth felony offender. Id. at pp. 4-6,165 So.3d at 231-32.
The Cureaux Court applied the Barker factors and found the multiple bill was not untimely. The Court noted that, with regard to the time preceding the filing of the first multiple bill,. the multiple offender hearing had been .continued at the request of the defendant on three occasions and the defendant had never timely objected to any postponements of the hearing. After the filing of the second multiple bill, the Court noted the defendant had moved to continue the hearing five times, and had failed to object to any other continuances. The Court also noted that much of the delay could be attributed to the appellate process and that the defendant had failed to show that the State had acted in bad faith, used dilatory tactics, or was abusive or vindictive. Moreover, there was no evidence that the State had knowingly or intentionally failed to file the first multiple bill. . Finally, this Court found that the defendant was aware, at least by the time of the first multiple bill hearing, that the State was pursuing habitual offender status. Accordingly, the Cureaux Court found no abuse of the district court’s discretion in denying' the motion to quash.
Applying the Barker factors to the facts of the case sub judice, the first factor, the length of the delay, weighs in favor of Defendant. Defendant was found 12(|guilty on January 12, 2012, and although the multiple bill hearing was set and re-set numerous times over a two-year period, the State did not actually file the multiple bill'of information until January 10, 2014.
The second factor, the reason for the delay, however, can be attributed to both Defendant and the State. The date that *368 Defendant was found guilty, January 12, 2012, a multiple bill hearing was set for March 2, 2012 (even though no multiple bill had been filed). The multiple bill hearing was continued on motion by the defense on nine occasions, and the hearing was continued on two occasions prior to the filing of the multiple bill because Defendant did not appear. After Defendant received his original sentence, the multiple bill hearing was continued on seventeen occasions when Defendant was in custody but' not brought into court. On one of those occasions, the date the multiple bill was 'filed, the State requested a continuance. The State also requested a continuance on March 12, 2014, because the clerk’s office had not yet located the records requested by the State. When questioned by the court regarding the delay in filing the multiple bill at the multiple bill hearing, the State responded that it did not know the réason for the delay.
•Thus, Defendant requested nine continuances, while the State requested two. Defendant’s requests for continuances were the main reason for the delay in holding the multiple bill hearing throughout 2012, while the main reason for the delay throughout 2013 appears to" be attributable to the failure to secure Defendant’s presence in court while he was in custody.
The third Barker factor, the assertion of the right, weighs against Defendant. Although we are hesitant to impose the obligation on Defendant to have availed himself of the remedy afforded by La.C.Cr. P. art. 874 and “invoke the |⅞1 supervisory jurisdiction of the appellate court” regarding the delay in his multiple offender sentencing when the State had not even filed the multiple bill of information until January 2014, we must note that Defendant never objected, to the .continuances of the multiple offender hearing nor did he assert his right to prompt resolution of his multiple offender status before the-district court. As previously mentioned, it is evident that Defendant was aware in May 4, 2012 that the State was seeking a life sentence, and a multiple bill hearing was first set for March 2, 2012.
The fourth factor, prejudice, also weighs against Defendant. Defendant was sentenced to' twelve years at hard labor on September 19, 2012, and he remained in custody while the multiple bill was filed on January 10, 2014, and until the multiple bill hearing was held, on March 31, 2014. Moreover,' Defendant was not surprised that the State planned to seek an enhanced sentence as he was informed that the State was seeking to impose a life sentence against him as a multiple offender as early as in 2012. Accordingly, the approximate two-year delay from the date that Defendant was found guilty to the filing of the multiple bill of information (and the approximate fifteen-month delay from the date that Defendant was originally sentenced) did not prejudice Defendant.
Considering the applicable jurisprudence discussed above, the delay in this case of filing the multiple bill was shorter than the three-year, eight month period found to be unreasonable in McQueen. The Broussard case, with a thirteen:month delay between .the original sentence and filing of the multiple bill of information found to be unreasonable, is distinguishable as the defendant in. Broussard was prejudiced by being released on parole prior to the time when multiple bill proceedings were completed. Additionally, despite a delay of fifteen months after ^sentencing before a multiple offender hearing was held and a delay of two years and nine months before -the first multiple bill of information was filed, the Cureaux Court found such a delay was not unreasonable, particularly where the defendant, as is the case here, did not object to the *369 continuances and was partially responsible for the delay.
Defendant’s case is most analogous to McNeal, wherein this Court found-that the State’s failure to file the multiple bill until nearly two years after the defendant’s conviction was not prejudicial because the defendant was convicted of armed robbery and incarcerated at the time the multiple bill was filed, and even if sentenced to the minimum sentence, would still have been incarcerated. McNeal, 1999-1265, pp. 8-9, 765 So.2d at. 1118. Notably, in McNeal, the record revealed that sentencing was continued three times by joint motion, and the record did not indicate which party sought to have sentencing continued on the other six occasions. See also State v. Burton, 2007-1342, p. 8, unpub. (La.App. 4 Cir. 4/23/08), 2008 WL 8922913 (holding that a four-year delay in adjudicating the defendant as a habitual' offender was not prejudicial where “the State took no action to cause the delay, did not benefit from the delay, and did not act in bad faith.”)(footnote omitted).
Similarly, in Buckley, this Court found that the defendant was not prejudiced when the multiple bill hearing was not held until approximately three years after the defendant was sentenced because the defendant, was advised at the time of sentencing that a multiple bill would be filed, and the first multiple bill hearing was set approximately four months after the defendant was found guilty. Buckley, 2011-0369 at p. 7, 88 So.3d at 487. Additionally, as this Court noted in Simmons, the defendant in Buckley was sentenced to twenty years, “making prejudice caused |a3by the delay unlikely.” Simmons, 2013-0312 at p. 5, 126 So.3d at 696, n. 8.[18] The same reasoning applies to the delay in the State’s filing of the multiple bill in this case, as Defendant was. sentenced to twelve years, and Defendant had knowledge within months of being found guilty that the State intended to seek a life sentence! Thus, Defendant’s argument that there was “inherent prejudice to him-, because the State ha[d] allowed him to rely on the fact that he will be released on his release date,” which, .according to Defendant, would be in 2017, lacks merit.
Although the multiple bill in Toney was timely filed, the Toney Court’s reasoning is also applicable ito this 'case, as the Court noted' that the timely-filed multiple bill “alert[ed] the defendant-to the possibility that his sentence would be enhanced” and “[tjhus, the defendant was not caught by surprise.” Toney, 2002-0992 at p. 6, 842 So.2d at 1086. Likewise, in this case, the setting of the multiple bill hearing for March 2, 2012 on the date that Defendant was found guilty alerted him to the possibility that his sentence would be enhanced, and Defendant’s pre-emptive filing of the motion to quash the not-yet-filed multiple bill on May 4, 2012, evidences that Defendant was not caught by surprise. See also Zachary, 2008-0634 at pp. 3-4, 995 So.2d at 632 (finding that “[wjhile the delays in bringing the habitual offender proceedings to a conclusion are unusual, defendant knew shortly -after [his] conviction that the state would pursue enhanced punishment.”) .
Defendant attempts to 'distinguish Muhammad, arguing that, although the defendant in that case was aware from‘the date ' of sentencing that ’ the State' was Ingoing to charge him as a multiple offender, the multiple bill was filed on the date of sentencing and the first multiple bill hear *370 ing was conducted only four months later. However, because Defendant' herein was always in custody, Defendant is not faced with the Court’s concern in Muhammad, which-was that a defendant-could be released from prison, and subsequently, the State could file a multiple bill:
In Muhammad, the original multiple offender bill of information was filed on the date of the defendant’s sentencing, which was before he was released from custody. Due to a series of.events, including remands following two appeals, the defendant was not finally adjudicated a multiple offender until four months after his sentence completion date. The issue was whether or not the multiple offender adjudication was timely completed. The Court found that the State did not unduly or unreasonably delay in completing the multiple offender proceedings, noting the “[defendant was never released from prison only to have the State thereafter file enhancement proceedings.” [Muhammad, 2003-2991] at 17, 875. So.2d at 56.
Buckley, 2011-0369 at p.. 6, 88 So.3d at 487.[19]
Furthermore, there is no evidence of bad faith or vindictiveness on the part of ■the State. While the matter was continued on numerous- occasions throughout 2013. because -Defendant was in custody but not brought to court, these delays do not show bad faith or vindictiveness by the State.
For the foregoing reasons, we find that the district court did not abuse its discretion in denying Defendant’s motion to quash.

ASSIGNMENT OF ERROR NUMBER 2

In. his second-assignment of error, Defendant argues that his life sentence as. a fourth felony .offender is excessive under the circumstances, requiring aj^downward departure from the mandatory minimum sentence of life imprisonment.[20]
Our task in reviewing' á sentence for excesSiveness is two-fold: First, we must' determine from the record that the district court considered the sentencing *371 criteria set forth in La.C.Cr. P. art. 894.1. See State v. Hall, 2014-1046, p. 19 (La.App. 4 Cir. 5/13/16), 172 So.3d 61, 72, writ denied, 2015-0977 (La.6/5/15), 169 So.3d 348 (finding the district court failed to comply with La.C.Cr.P. art. 894.1(C) when considering a request for downward departure and remanding the case for resen-tencing); State v. Ladd, 2014-1611 (La.3/27/15), 164 So.3d 184 (pet curiam) (remanding case for downward departure consideration and resentencing in compliance with La.C.Cr.P. art. 894.1(C)).[21] The primary purpose of La^C.Cr.P. art. 894.1 is not to enforce rigid and mechanical compliance with its provisions, but to ensure that there is a factual basis for the sentence imposed. State v. Batiste, 06-0875 at p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820; State v. Major, 96-1214 at p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819. Importantly, La.C.Cr.P. art. 894.1 is “not an exclusive listing of factors to be considered in imposing a sentence. Any and all relevant factors can and should be taken into account by. the trial court.” State v. Lanclos, 419 So.2d 475, 478 (La.1982). The United States Supreme Court has emphasized that “ ‘[h]ighly relevant — ' if not essential — to [the] selection of an appropriate sentence is the' possession of the fullest information possible concerning the defendant’s life. and characteristics.’ Permitting sentencing courts to consider the widest possible breadth of information about a defendant ‘ensures that the punishment will suit not merely the offense but the individual defendant.’ ” Pepper v. U.S., 562 U.S. 476, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196 (2011) (internal citation omitted) (quoting Wasman v. U.S, 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)).
If adequate compliance with article 894.1 is found, or if the sentence is fully supported by the record, a reviewing court must next determine whether the sentence imposed is too severe in light of this particular defendant and the circumstances of his case, keeping in mind that “maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the ‘worst kind of offender.’” State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982) (citing State v. Jones, 398 So.2d 1049, 1053 (La.1981)). This second step in reviewing a defendant’s sentence requires us to determine whether the punishment imposed violates La. Const, art. I, § 20 by being “grossly disproportionate to the seriousness of the offense or constitutes nothing more than a needless infliction ofj^pain and suffering”. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. See also State v. Ambeau, 08-1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221 (“A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, arid is grossly out of proportion to the severity of the crime.”) -Even when the legislature has *372 determined an appropriate mandatory minimum sentence, the judiciary has the authority to find such a sentence excessive and must pronounce a constitutional sentence. State v. Johnson, 97-1906 (La.1998), 709 So.2d 672, 676 (citing State v. Sepulvado, 367 So.2d 762, 767 (La.1979)). This power extends to determining whether the minimum sentences mandated by the Habitual Offender Law are constitutionally excessive. Johnson, 97-1906, 709 So.2d at 676 (citing State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993)).
As the State correctly argues, a “sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional.” Johnson, 97-1906, 709 So.2d at 676. To rebut this presumption, Defendant must clearly and convincingly show that:
... [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to. the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id, (citing Young, 94-1636 at pp. 5-6, 663 So.2d at 528) (Plotkin, J., concurring). The Louisiana Supreme Court held in Johnson that downward departures, from the mandatory minimum sentence “should occur only in rare situations.” Id. at 677.
Moreover, the mere fact that a habitual offender’s crimes were all nonviolent is not enough to warrant a downward departure from a mandatory minimum, sentence. State v. Briscoe, 99-1841, pp. 13-14 (La.App. 4 Cir. 1/17/01) 779 So.2d 30, 39; State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. “Thisfis because the defendant’s history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law ...” Lindsey, 99-3256 at p. 5, 770 So.2d at 343.
Despite the rarity of a dowpward departure, however, we are cognizant that, when reviewing a mandatory life sentence for. excessiveness, we.,should apply a heightened scrutiny to our analysis. In State v. Burns, 97-KA-1553 (La.App, 4 Cir. 11/10/98), 723 So.2d 1013, this Court considered whether a defendant, a fourth felony offender who received the mandatory minimum of a life sentence would, be deemed “exceptional,” The Bums Court emphasized that “[w]henever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if defendant falls within those “rare” circumstances where .a downward departure is warranted.” Id., at 1019.
Defendant concedes that he received the mandatory minimum sentence of life imprisonment, a sentence presumed to be constitutional. However, Defendant argues that the mandatory minimum ' sentence is excessive in light of his own personal circumstances: he is over fifty years of age, and a life sentence at that age would make no measurable' contribution to the acceptable goals of punishment; all of his past crimes are non-violent; and, his criminal history was strongly influenced by his twenty-year, life-long struggle with drug addiction. Defendant further contends that the fact that he “was able to go for long periods of time without any convictions ... shows that he can be rehabilitated with the proper treatment.”
.We begin, as we must, by first reviewing the record and .Defendant’s sentencing to ensure that the district court’s decision to impose a life sentence in this case was made with sufficient information to satisfy La.C.Cr.P. art. 894.1 and l28with consideration-for the requisite heightened scrutiny *373 to be given for a sentence reserved for the worst offenders.
The record before us shows that Defendant was born in May of 1963, making him nearly 51 years of age at his sentencing on the multiple bill. He pled guilty and thus obtained his first conviction for possession with intent to distribute cocaine and possession of POP in 1989, when he was 26 years old. He was given a 3 year suspended sentence-with 3 years of probation on the possession of PCP charge and a ten year suspended sentence with five years of probation relative to the possession with intent to distribute cocaine charge. He was also allowed to participate in a drug rehabilitation program. The drug treatment appears to have been at least partially successful as Defendant’s next conviction did not occur until 1998 when Defendant was 35 years of age. The 1998 conviction was for simple burglary of a hospital and its dialysis unit (2 counts), a crime for which Defendant again pled guilty. As part of his plea agreement, he was double-billed and received a-prison sentence of. 6 years with the coiirt recommending his participation in a drug'rehabilitation prograin and in an Impact Treatment (“boot camp”) program. Subsequently,- at age 41, Defendant pled guilty in 2004 to theft of a laptop (goods valued at greater than $500).[22] His present conviction for simple burglary of an inhabited dwelling occurred approximately 8 years later for which he was ⅛ initially sentenced to 12 years at hard labor but subsequently re-sentenced as a multiple offender to life imprisonment.
IsnOther than the information relative to Defendant’s past crimes, however, the record is lacking in all1 ■ other respects. Nothing was presented' at the* sentencing hearing nor does any documentation exist regarding Defendant’s marital or family history, his educational level," his employment history, the status of his medical or mental health, including his addiction history, or regarding the likelihood of his rehabilitation. Since Defendant did not testify at trial' or' at the sentencing hearing and since no witnesses testified at either proceeding on Defendant’s behalf, little was made known to the court about this particular defendant.
Despite the void of information about Defendant, the district court did' not order or review a PSI report before sentencing.[23] A PSI report 'of defendant's background, particularly when a court must decide whether he should be given the harshest sentence available (other than a death sentence), can be critical to the defendant and to the very integrity of the judicial system. See State v. Lockwood, 439 So.2d 394, 397 (La.1983). (“The'purpose of the PSI and report' is so important to the defendant and to the integrity of the judicial system that it must be fair, not based solely on impression or opinion, but based on conclusions rationally derived from information from identifiable sources”)(emphasis added). Pursuant to La.C.Cr.P. art. 875 A(l), a “court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presen- *374 tence investigation” (emphasis added). Article 875 A(l) thus gives the sentencing judge the discretion to order that a PSI be conducted rather than makes a PSI mandatory. However, in the, absence of any testimony or evidence developed, during the lRisentencing hearing, as is the case here, such a report can greatly assist the sentencing judge in substantively evaluating the Article 894.1 factors as well as in tailoring the sentence given to a. particular defendant. When making his PSI, the probation officer “shall inquire into the circumstances attending the commission of the' offense, the defendant’s history of delinquency or criminality, his family situation and background, economic and employment status, education and personal habits.” La.C.Cr.P. art. 875 A(l). Additionally, if so ordered, a PSI would provide a reviewing court with a complete record when reviewing sentences for excessiveness.
At Defendant’s sentencing hearing, the district court stated on the record that, he “had considered the provisions of La. C.Cr.P. art. 893”[24] together with Defendant’s “status as a quadruple offender.” Despite this claim, with the exception of the nature of Defendant’s past and present crimes, none of the factors set. forth in the sentencing provisions or which would have been uncovered during a PSI were identified or discussed by the sentencing court. Moreover, there was no indication that the district court reviewed any reliable evidence before imposing the life sentence as a habitual offender or before denying Defendant’s request for a downward departure from the mandatory minimum life sentence. The court merely noted that Defendant’s first conviction was for possession of POP, which carried a sentencing range of five to twenty years,- and possession of cocaine with intent to distribute, which carried a maximum sentence of thirty years; .that his second conviction was for simple burglary of a dialysis center and Touro Hospital, which carried maximum sentences of twelve years; that his third conviction was for theft 1 agof a computer in an amount over $500.00, which carried a maximum sentence of five years; and that his conviction in the instant case was for burglary of an inhabited dwelling, which carried ‘a maximum sentence of twelve years.
The district court noted that it was “mindful of the provisions of Louisiana Revised Statute 15, Subsection 529.1, paragraph 4, subsection B,” (the Habitual Offender Law), which provided that if two of the prior felonies are violations of the Uniform Dangerous Substances Law punishable by ten years or more, .or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, “the person shall be .in prison for the remainder of his natural life without the benefit of parole, probation, or suspension of sentence.” See La. R.S. 15:529.1(4) B.[25]
Immediately before imposing the mandatory life sentence, the district court offered the following summation of its sentencing decision:
After having considered all of the testimony that was presented to the jury at trial, the fact that the residence [sic] of this place were at home asleep when Mr. Ellis and his partner entered the home *375 to burglarize it, I feel that any lesser sentence would deprecate [sic] from the serious nature of your crime. This is anyone’s wors[t] nightmare, to feel that you are safe in your home and there is [sic] people walking into ,your house and sneaking around and stealing your possessions. Whether you intend to use the money to buy dope, is not a mitigating factor in the eyes of this Court; therefore, the previous sentence that was imposed in this case is hereby vacated and set aside;
There are two troubling aspects of this discourse. First, it appears that the district court gave great weight to Defendant’s most recent crime, simple burglary of an inhabited dwelling, based upon his own opinion and, with no reliable evidence before him regarding other pertinent sentencing factors. Although the ^district court opined that Defendant’s most recent crime was “anyone’s worst nightmare,” the legislature did not include simple burglary of an inhabited dwelling in its list of crimes of violence[26] and has already assigned the length of sentence deemed appropriate to that crime. See State v. Hamdalla, 12-1413, p. 15 (La.App. 4 Cir. 10/2/13), 126 So.3d 619, 626 (“[Penalties provided by the legislature reflect the. degree to which the criminal conduct is an affront to society.”) (citation omitted).
A second, equally concerning issue is that the sentencing court clearly rejected any consideration of the motivation behind Defendant’s crimes when he stated that Defendant’s drug-addiction was not a mitigating factor “in the eyes of this court.” This flies in the face of our jurisprudence. Whether a defendant’s crimes were fueled by his or her own drug-addiction (i.e., needing money to support addiction) is often considered during sentencing in our jurisdiction. See Burns, 97-1553, 723 So.2d at 1019; Briscoe, 99-1841 at pp. 16-18, 779 So.2d at 41-43; Hall, 2014-1046 at pp. 16-17, 172 So.3d at 70-71; State v. Stevenson, 99-2824 at p. 4 (La.App. 4 Cir. 3/15/00), 757 So.2d 872, 874-875, writ denied, 2000-1061 (La.11/17/2000), 773 So.2d 734.
Given the “heightened scrutiny” which should be given to whether a particular defendant’s criminal history warrants the imposition of a life sentence, see Bums, supra, the record fails to provide evidence that the district court gave proper consideration to Defendant’s motion for downward departure. A thorough PSI or downward departure forensic examination would require a broad' consideration of psychiatric, psychosocial, and medical factors and their impact on this particular defendant; Without taking evidence at the sentencing hearing to | ^address any of these factors and'without the assistance of a PSI and report, we are tínable to conclude either that Defendant’s mandatory life sentence is constitutional or that there is clear: and convincing • evidence to the contrary. Accordingly, a remand for a new sentencing hearing is required. See Stevenson, 99-2824 at pp. 6-7, 757 So.2d at 876 (finding record insufficient to determine whether departure from the mandatory minimum life sentence was constitutionally required and remanding for new sentencing hearing.):
Dóspite the limited record before us, a review, of the relevant jurisprudence demonstrates that Defendant may have been a worthy candidate for downward departure if he had been given a proper sentencing hearing. .
*376 In State v. Burns, this Court considered whether, a defendant, a fourth felony offender who received the mandatory minimum of a life sentence would be deemed “exceptional.” Burns, 97-1553, 723 So.2d at 1019. The Bums Court, applying the heightened scrutiny triggered by the defendant’s life sentence, noted the following factors for downward departure consideration: the defendant was “only 25 years old” and “young enough to be rehabilitated”; the defendant freely admitted that he was addicted to • cocaine; none of his crimes were crimes of violence (his current conviction was for possessing a minimal amount of crack cocaine, two of his. prior convictions were for possession of cocaine and one conviction was for possession of stolen property); and, there were no allegations that a dangerous weapon was .used in any of the defendant’s crimes. At the sentencing hearing,, the - court, noted that defendant had a supportive family background and that the defendant suffered from a recurring medical problem (memory problems resulting from a prior injury). The Bums court also recognized that a life sentence for a- non-violent offender has significant costs to society. "|<¡B[L]ife imprisonment imposes an undue burden on the taxpayers of the state who must feed, house, and clothe this defendant for life. As defendant ages, these costs will only increase due to the need for geriatric health treatments.” Id. (citations omitted).The court, unable to conclude that defendant’s life sentence was not excessive under the constitutional standard, vacated the sentence and remanded the case for resentencing in accordance with its opinion.[27] •
Defendant has 'several similarities to the Bums defendant. His crimes are all nonviolent and no weapons were employed during any of his crimes. Defense counsel attempted to argue to the' sentencing court that Defendant’s crimes were committed with the purpose of financing his drug addiction, although the supporting evidence presented to the district court was unclear on this point[28] and a PSI report on *377 Defendant’s drug abuse history was not conducted. t However, defense counsel did argue that Defendant’s drug charges began in the 1980’s and he,that in 1989, Defendant was sentenced to.drug court. Although Defendant, as an older prisoner in his 50’s, cannot argue that his .youth can be considered as a factor for downward departure as was the case in Bums, Bums did recognize that older prisoners’ need for geriatric health care increases the cost to society when, a defendant must be imprisoned for life. See Burns, 97-1553, 723 So.2d at 1020.
Moreover, the Louisiana Supreme Court has recently provided some indication that, older-aged defendants may haye a strong argument that their “elder status” should be considered as a factor that makes .them “exceptional,” warranting a downward departure. In State v. Mosby, 2014-K-2704 (La.11/20/15), 180 So.3d 1274 (per curiam), the Louisiana Supreme Court reyersed this Court’s holding that a crack-addicted defendant with an “extensive criminal history”, whose first conviction occurred at age 52 and who was sentenced as a fourth offender at age 72, was not “exceptional” and thus a' downward departure from the mandatory minimum sentence of thirty years was unwarranted. See State v. Mosby, 2014-0215 (La.App. 4 Cir. 11/26/14), 155 So.3d 99.[29] The Louisiana Supreme Court held that the thirty year sentence imposed on a non-violent 72 year old multiple offender “amounts to nothing more than the ‘purposeful imposition of pain and suffering’ which renders this sentence on this particular defendant unconstitutional. State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). Indeed, it is unconscionable.” Mosby, 2014-2704 at p. 1, 180 So.3d 1274. The Court remanded the ease , to the district court, ordering it to re-sentence the defendant to. a [37term of imprisonment which “would not be constitutionally excessive and stating for the record its considerations and factual basis. La.C.Cr.P.. art. 894.1.”
In State v. Hall, supra, this Court similarly raised concerns about a defendant’s advanced age being a mitigating factor. The defendant in Hall was convicted for possession of a small amount of cocaine, and was, multiple billed based on" a prior conviction" for drug possession and two simple burglary convictions, all non-violent crimes. As a result of his habitual offender status, he was sentenced to the mandatory minimum of twenty years imprisonment. Id. Noting that the defendant was 56 years old and had a life-long drug addiction, this Court considered that evén a 20 year sentence would mean the defendant would likély die in prison and, “[a]s he' advances iñ age, the cost of imprisoning him will only increase.” Hall, 2014-1046 at p. 18, 172 So.3d at 72. Finding'that the district court “failed to sentence Hall in accordance with La.C.Cr.P. art. 894.1(C), and in light of the circumstances of the Defendant’s life, addiction, and history as a non-violent offender,”'this Court remanded the case for re-sentencing. Hall, 2014-1046 at p. 19, 172 So.3d at 72.
Based upon the record before this Court, the district court did not adequately comply'.with the sentencing requirements of La.C.Cr.P. art. 894.1. Defendant was sentenced to the mandatory, minimum sentence of life imprisonment without proper consideration being given to whether this .particular defendant warrants the most serious of punishments. While, we do not *378 hold that the district court must order a PSI report every time a defendant is sentenced to a mandatory minimum life sentence, we find, under the facts of this case, that- the district court’s failure to do so resulted in an incomplete record for review. The record is simply too insufficiently developed for the district court to have properly determined that | ¡^Defendant has no redeeming values which would make him “exceptional” so as to warrant a downward departure. All that is offered from the record before us are “glimpses of evidence” which may or may not show Defendant struggled with addiction, does not have the propensity for violence, and may have been able to go significant periods of time between convictions, arguably evidencing an ability to be rehabilitated. Although not discussed at the sentencing hearing, there is some evidence in the record to show that, while incarcerated more than two years before the. State filed the multiple bill, Defendant was involved in faith-based and rehabilitation programs, and may have been being considered for work release.[30]
The Eighth Amendment declares: “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” , The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed. Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). While this defendant unquestionably deserves imprisonment; on the record before this court we cannot say that he is deserving of life in prison, a punishment generally reserved for the worst offenders. -
■ Accordingly, we remand this case to the district court for the purpose of conducting a meaningful sentencing hearing with due consideration for the “heightened scrutiny” required in imposing punishment on a defendant who may be subjected to a mandatory life sentence, and for compliance with Article 894.1(C). The district court may take evidence and/or order a PSI report regarding Lathe sentencing factors addressed in this opinion, and any others deemed pertinent to a determination of whether Defendant is “exceptional” and thus deserving of a downward' departure from the mandatory minimum life sentence. If Defendant succéeds in carrying his burden, the district court, after carefully 1 considering Defendant’s evidence and any countervailing evidence offered by the State, should re-sentence Defendant to the longest sentence that would not be constitutionally excessive and state for the record its considerations' in sentencing and the'factual basis therefore.
For the foregoing reasons, we affirm the denial of Defendant’s motion to quash, vacate Defendant’s sentence, and remand this matter for a. full, sentencing hearing and resentencing for the district court to comply with Article 894.1(0) in light of Defendant’s life circumstances, long-term addiction,.and non-violent criminal history.
MOTION TO QUASH AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS
LOMBARD, J., concurs in result.
BELSOME, J., concurs in the result.

. Defendant was jointly indicted with Patrick Constantin in count two. Constantin alone was indicted in count one for a separate violation of La. R.S. 14:62.2. Constantin pled guilty in return for a sentence of six years imprisonment.

. This Court affirmed Defendant's conviction and sentence and the Louisiana Supreme Court denied his application for supervisory writs. State v. Ellis, 2013-1401, p. 32 (La.App. 4 Cir. 2/4/15), 161 So.3d 64, 83, writ denied, 2015-0489 (La.1/15/16), 2016 WL 531517.

.Defendant filed the motion for downward departure in May 2012, after Defendant’s initial sentencing to twelve years imprisonment.

. The multiple offender hearing was set despite the fact that the State had yet to file a multiple bill of information.

. The minute entry for March 1, 2012 does not appear in the record, but the docket master indicates that on that dpte, defense counsel filed a motion to continue sentencing. There is likewise no minute entry for April 12, 2012; however, the docket master indicates that the defense requested a continuance on that date, and the minute entry for April 13, 2012 indicates that the court- granted a continuance on a motion by the defense. There is no minute entry for April 19, 2012, but the docket master indicates that the defense requested a continuance on that date-. Similarly, there is no minute entry for July 27, 2012, but the docket master indicates that the multiple bill hearing was continued on a defense motion.

. Although the multiple bill hearing had been re-set numerous times, the State had still not filed the multiple bill of information at the time Defendant filed his first motion to quash; however, Defendant maintained at the multiple bill hearing held March 31, 2014 that he had preemptively filed a motion to quash the multiple bill.

. La.C.Cr.P. art. 782 requires, inter alia, for ten of twelve jurors to concur in rendering a verdict for a case in which confinement is necessarily at hard labor.

. Also on that date, the district court denied Defendant’s motion for new trial, motion for mistrial (erroneously indicated as "new trial”), and motion for post-judgment verdict of acquittal.

. The minute entry from July 12, 2013 is omitted from the record; however, the docket master indicates that on that date, Defendant was not brought to court and was in custody.

. La.C.Cr.P. art. 874 provides that a sentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, Article 874 allows him to invoke the supervisory jurisdiction of the appellate court. Thus, the district court noted that Defendant had failed to avail himself of such a remedy.

. In addressing the arguments made by counsel for Defendant and the State regarding application 'of the Barker factors, the district court stated:
Barker versus Wingo .... did not apply to a multiple bill. So if the Court uses the Barker versus Wingo factors to resolve this issue, those factors would be the length of the delay. The reason for’ the delay. — well, I don’t know ' the reason for ihe delay.
The assertion of right to speedy trial, I don’t understand how a defendant could" assert a *361 right to' speedy trial when the bill of information has not been filed. You can't anticipate that one day you’re going to do something wrong and you’re going to want to have a speedy trial. As suggested in Counsel’s brief, I have looked at the articles having to do with sentencing, specifically 873 and 874, Louisiana Code of Criminal Procedure. 874 is informative. It states, and I quote, sentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed he may invoke the supervisory jurisdiction of the appellate court. That wasn’t done in this case. And this is what the legislature provides as a remedy: he may invoke the supervisory jurisdiction of the appellate court.
Now, once you start talking about reasonableness, that means judicial discretion. It’s up to the lower court to decide on the facts of the case, what is reasonable and what is not, and that’s what the case law means when they say there's no bright line rule.
Judge, do what’s reasonable under the circumstances. Sentence shall be imposed without an unreasonable delay. Well, in this case, the sentence was imposed without an unreasonable delay. The complaint about the unreasonable delay has to do with the adjudication of the multiple bill. The last factor from the Barker versus Wingo test is-prejudice, and there hasn’t been any showing of prejudice.
I thought I was going to get out on this date. It looks like I might be in here for the rest of my life. Well, ⅛ as you claim they said, from day one he’s a triple-lifer, and usually when a person walks out of the back, I ask what is their bill status, and if they say triple-life, that puts the defendant on notice. And he knows his criminal history better than these lawyers, that he could be facing a life sentence. But for prosecutorial-and sometimes we don’t get what we want just because somebody else was not diligent iñ their performance of their duties.
So I’m going to have to deny your motion to quash and please feel free to take me up.

. January. 12, 2012 is the date Defendant was convicted and the date when the first multiple offender hearing was set by the district court.-

. The State further argues that the record evidences that on May 4, 2012, Defendant was aware that the State was "specifically seeking a life sentence, as he stated in his motion to quash that ‘‘[t]he State has alleged that the defendant is subject to a life sentence.” That same date, Defendant also stated in his motion for downward departure that "a mandatory sentence of life at his age . would make no measurable contribution to the acceptable goals of punishment.”

. In Dominick, the multiple bill was filed immediately after the defendant rendered his guilty plea and was sentenced. After the defendant was allowed.to withdraw his guilty plea, the multiple bill was again filed immediately after sentencing post-trial and was conducted the day after sentencing.

. When the assistant district attorney was asked at the multiple bill hearing why the filing was delayed, he simply responded that he did not know.

. he State does not cite to. the record for this argument. Presumably, the .State refers to the continuances requested by the State on January 10, 2014 and March 12, 2014.

. Furthermore, as in both Zachary, 2008-634 at pp. 3-4, 995 So.2d at 632, and Buckley, 2011-0369 at p. 7, 88 So.3d at 487, the defendant was aware that the state had timely filed a multiple bill, which, as the district court recognized, was repeatedly reset for hearing. Like Zachary, "[w]hile the delays in bringing the habitual offender proceedings to a conclusion are unusual, defendant knew shortly after [his] conviction that the state would pursue enhanced punishment." Richardson, 2014-0754 at p. 18, 155 So.3d at 97 (emphasis added).

. Simmons, supra, is not applicable, as the ' defendant in that case requested only one of fifteen continuances, and the defendant in Simmons had completed his entire sentence and had been released. ' ‘ ■ "

. Compare State v. Severin, 2008-0005, p, 6 (La.App. 5 Cir. 4/29/08), 985 So.2d 277, 280 (reversing trial court’s denial' of the defendant’s motion.to qtiash where the State did not file the multiple bill until seven months after the defendant was sentenced and four months after the defendant was released from custody and on parole even though the State indicated at sentencing that it intended to file a multiple bill against the defendant).

. Defendant raised his claim that his sentence was excessive when he filed a motion to ' recoiisider sentence with the district court on May 30, 2014. The motion was not ruled upon. The district court was without authority to consider the motion because it was not filed within thirty days of Defendant's March 31, ■' 2014 sentencing as mandated by La, C.Cr.P. art. 881.1. However, Defendant had earlier filed a motion for downward departure on May 4,, ,2012, wherein he argued that “a mandatory sentence of life at his age would make no measurable contribution to the acceptable goals of punishment.” Counsel for Defendant also argued the .pierits of the motion fpr downward departure prior to Defendant’s resentencing. Additionally, the district coürt indicated immediately prior to resentencing Defendant that it “considered Dorothea [sic] and I have rejected it.” Finally, when, sentencing Defendant, the district court stated, “[ylou shall be imprisoned for the remainder of your natural life without the benefit of parole, probation, or suspension of sentence, and I note your objection.” ' This Court has found'that the district court’s note of an objection to the sentence is sufficient to preserve a claim of constitutional excessiveness. See State v. Miller, 2000-0218, p. 8 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 111. Therefore, we accept the motion for downward departure and the district court’s note of objection as a timely objection to and/or motion to reconsider Defendant’s life sentence,. and address the merits of Defendant’s excessiveness claim,

. The State cites State v. Ladd, 2013-1663, p. 2 (La.App. 4 Cir. 7/2/14), 146 So.3d 642, 644 for the proposition that a twenty-year sentence given to a "non-violent drug user who stands convicted of possessing roughly a half ounce of marijuana who previously pleaded guilty (at age eighteen) to possession of LSD and (at age twenty-one) to possession of hy-drocodone” was not excessive. However, although this Court found that the defendant in Ladd did not demonstrate exceptional circumstances such that a downward departure was warranted, the Louisiana Supreme Court reversed this Court on March 27, 2015 and remanded the Ladd case for resentencing, ordering the district court to consider La. C.Cr.P. art. 894.1(C) and "state for the record the considerations taken into account and the factual basis therefor in imposing sentence,” State v. Ladd, 2014-1611, p.1 (La.3/27/15), 164 So.3d 184 (per curiam).

. The record does not contain evidence regarding the length of defendant’s sentence for his 2004 conviction for theft of goods over . $500, although it does not appear that he was multiple billed for this conviction.

.. According to the motion to reconsider sentence filed in the district court on May 30, 2014, "[t]he sentence was imposed without consideration of mitigating factors, which would have been more -fully revealed had a PSI been ordered.” Also, review of the transcript .from Defendant’s sentencing hearing held on March.31, 2014 reveals that the district court did not reference a PSI report nor does a PSI report appear in the record for this Court's review.

. The district court apparently misspoke and appears to have been referencing the sentencing - guidelines set forth in La.C.Cr.P. art. 894.1.

. The district court also noted that both of Defendant’s prior drug offenses required sentences of over twelve years, as well as two additional crimes, including the current crime, which required punishment of up' to twelve years at hard labor.

. See La. R.S. 14:2 listing enumerated-offenses which are included as crimes óf violence.

. This Court acknowledges that, despite the “heightened scrutiny” that must be given to life sentences as required by Bums, this Court ■ has declined to extend-Bnras in several cases where life sentences were given. In State v. Finch, the defendant, age 23 at sentencing, had' accumulated' three felony convictions over a period of four years (for possession of heroin, possession with intent to distribute crack cocaine, and possession of stolen property valued over $500) and was given a life sentence. Finding nothing "exceptional” to warrant a downward ■ departure, the court noted that the record was. lacking any evidence that the defendant had any "redeeming values” and "there was no evidence that the defendant was driven by his addiction to sell drugs to supp.ort his habit.” Finch, 97-2060 at pp. 12-13 (La.App. 4 Cir. 2/24/99), 730 So.2d at 1027. Similarly, in State v. Long, 97-2434 (La.App. 4 Cir. 8/25/99) 744 So.2d 143, this court affirmed a mandatory minimum life sentence for a 30 year old third felony offender convicted of distribution of marijuana and cocaine, distribution of false drugs and possession of cocaine. Although all of the defendant's felonies were non-violent, no evidence was introduced to indicate that the defendant was addicted to drugs, as there had been in Bums, and there was no evidence of the defendant’s redeeming values or testimony offered by family or friends in support of the defendant,

. In fact, during the sentencing hearing, the district court asked defense counsel what evi- ; . dence went to the jury to show that the burglary of the inhabited dwelling was driven by Defendant’s abuse of drugs. Defense counsel responded that Defendant's co-defendant, Who testified against him, had reported that . he and Defendant were looking for drugs on the night in question and that both were drug addicts. Defense counsel also reported that he had objected to the co-defendant’s testimony that he and Defendant were "up all night doing heroin.” The district court, however, did not have the transcript of trial before it and over two years had passed since the judge presided over Defendant’s trial.

. Notably, the district court ordered a PSI report prepared in the Mosby case before deciding that a downward departure was not warranted. See Mosby, 2014-0215 at pp. 17-20, 155 So.3d 99, 111-112. The PSI was thus available for the Louisiana Supreme Court’s review in determining that remand was appropriate.

. At the sentencing hearing, counsel for Defendant did proffer a memorandum from the chaplain of the correctional center in support of Defendant relative to his voluntary attend-anee at religious services and participation in faith-based programs. Whether the memorandum was considered is not evident from the record.